Wallace Wayne Hicks sued Alabama Power Company ("APCo"), alleging that APCo negligently maintained the premises where Hicks was working and that its negligence caused him to be injured. His wife, Cathy H. Hicks, joined his complaint, claiming damages for loss of consortium. APCo asserted that it was Hicks's "special employer" under Ala. Code 1975, § 25-5-53
(the exclusivity provision of Alabama's Workers' Compensation Act). The trial court entered a summary judgment for APCo on that basis; the plaintiffs appeal.
The evidence is undisputed that in 1974 Hicks was a member of Structural Iron Workers Local Union No. 92, which assigned him to work at Sullivan, Long Haggerty ("SLH"), a construction company. SLH and APCo had entered into a contract (the "SLH contract"), wherein SLH agreed to provide APCo with generation plant construction work, including craft labor and supervision, for its Miller Steam Plant project in Jefferson County, Alabama. The plaintiff worked at Miller Steam Plant pursuant to this contract. With the exception of certain occasions when his employment with SLH was terminated and he did work for other employers arranged by his local union, Hicks worked continuously at Miller Steam Plant between 1974 and March 1988, the date of the accident. At all times while working at Miller Steam Plant, Hicks worked as an iron-worker.
In March 1988, Hicks was injured at Miller Steam Plant while climbing upon a continuously moving elevator-type device known as a "man-lift" that allowed workers to move between different floors of a building under construction. He received worker's compensation *Page 1052 
benefits from SLH for this injury.[1] After settling his workers' compensation claim, Hicks sued APCo. On appeal, Hicks and his wife argue that he presented substantial evidence that APCo was not his special employer.
"In reviewing the disposition of a motion for summary judgment, we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact" and whether the movant was "entitled to a judgment as a matter of law." Bussey v. John Deere Co.,531 So.2d 860, 862 (Ala. 1988) (citing Chiniche v. Smith,374 So.2d 872 (Ala. 1979)); Rule 56(c), A.R.Civ.P. The movant has the burden of "showing material facts, which, if uncontested, entitle the movant to judgment as a matter of law." Berner v.Caldwell, 543 So.2d 686, 688 (Ala. 1989); Woodham v. NationwideLife Ins. Co., 349 So.2d 1110, 1111 (Ala. 1977). Once the movant has made this showing, the opposing party then has the burden of presenting evidence creating a genuine issue of material fact. Danford v. Arnold, 582 So.2d 545, 546 (Ala. 1991); Bass v.SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98
(Ala. 1989).
This action was filed after June 11, 1987; therefore, the nonmovant must meet the burden of establishing the existence of a genuine issue of material fact by substantial evidence. Ala. Code 1975, § 12-21-12; Bass v. SouthTrust Bank of BaldwinCounty, supra. "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989).
Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413
(Ala. 1990); Harrell v. Reynolds Metals Co., 495 So.2d 1381,1383 (Ala. 1986); Wilson v. Brown, 496 So.2d 756, 758
(Ala. 1986).
When a defendant in a common law action for damages asserts that the action will not lie because the injured person or decedent was a "special employee" of the defendant, the defense is an affirmative one, and the burden rests on the defendant to plead and prove it. Bechtel v. Crown Central Petroleum Corp.,451 So.2d 793, 795 (Ala. 1984); Rule 56(c), A.R.Civ.P. If APCo was a "special employer" of Hicks, as it argues, the exclusive remedy for Hicks's injury would be under the Workers' Compensation Act.
In Terry v. Read Steel Products, 430 So.2d 862, 865
(Ala. 1983), this Court first held that a defendant could be a "special employer" under Alabama's Workers' Compensation Act, and be held responsible for worker's compensation but immune from tort liability for injuries sustained by an employee. We adopted the following three-pronged test to determine who is a "special employer":
 "When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if
 "(a) the employee has made a contract of hire, express or implied, with the special employer;
 "(b) the work being done is essentially that of the special employer; and
 "(c) the special employer has the right to control the details of the work.
 "When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation. . . ."
Terry, 430 So.2d at 865, quoting 1C A. Larson, The Law ofWorkmen's Compensation, § 48 (1980).
Hicks argues that he presented evidence creating a genuine issue of material fact regarding each of the three prongs of the *Page 1053 
"special employer" doctrine. He argues that under the facts of this case one could find that he was employed solely by SLH and not by APCo.
APCo, however, argues that the underlying facts of this case are identical to those presented in Rhodes v. Alabama PowerCo., 599 So.2d 27 (Ala. 1992), wherein we affirmed a summary judgment in favor of APCo based on the "special employer" defense asserted by APCo for an accident that occurred at APCo's Miller Steam Plant and injured an employee of SLH, which had a contract with APCo that, it argues, is substantially similar to the one involved in this case.
In Rhodes, this Court addressed only the issue of "control." The plaintiffs in Rhodes did not raise the additional issues of "contract of hire" and "work of the special employer." 599 So.2d at 29. Because Hicks has raised these issues, the result in this case, as to those issues, is not controlled by the holding in Rhodes.
This Court has held that in determining whether a special employment relationship exists "the most important criterion to be scrutinized is the requirement of a contract of hire, express or implied." Terry v. Read Steel Products, 430 So.2d at 866. Indeed, "the courts have usually been vigilant in insisting upon a showing of deliberate and informed consent by the employee before employment relation will be held a bar to common-law suit." 1C, A. Larson, Workmen's Compensation Law, § 48.12, p. 8-440 — 8-445. A mutual agreement between the employee and the person alleged or claiming to be the special employer, i.e., a contract of hire, express or implied, is essential because an employee loses the right to sue the special employer at common law, while gaining other rights, when he or she enters into the special employment relationship.Id.
APCo admits that it had entered into no express contract with Hicks, but it argues that an implied contract existed by virtue of Hicks's understanding of, and his submission and consent to, APCo's exercise of control over his work. APCo argues that Hicks's consent may be inferred under the circumstances because he was hired pursuant to a labor broker contract. APCo argues that in labor broker contracts the general employer exists merely to place the employee with a special employer; it contends that the employee's consent and submission to the control of the special employer permits an implication of the employee's consent to that relationship. APCo argues that Hicks's acknowledgment that SLH was a "manpower supplier" indicates Hicks's awareness and understanding of the true working relationship between APCo and SLH and indicates his submission and acquiescence to APCo's supervisory role. APCo argues that this evidence, combined with evidence that APCo controlled the details of Hicks's work, conclusively establishes that an implied contract of hire existed between Hicks and APCo.
In contrast, Hicks argues that no implied contract between him and APCo existed. He argues that an employment relationship cannot be thrust upon him without his knowledge or consent and that he must understand that he is submitting himself to the control of a new master. Hicks argues that he did not understand this and that the SLH contract expressly contradicts APCo's contentions that he was an employee of APCo. He argues that the SLH contract does not permit an inference of consent. The contract itself, he argues, unequivocally expresses APCo's intent to consider SLH and its employees as independent contractors rather than as employees of APCo.
Hicks presented article 12 of the SLH contract as evidence that APCo did not intend to treat SLH and its employees as employees of APCo. That article provides as follows:
 "[SLH], in accordance with its status as an independent contractor shall not act as an agent or employee of [APCo], but shall be and act as an independent contractor, and hereby covenants and agrees that it will neither hold itself out as nor claim to be an officer or employee of [APCo] . . . and that it will not . . . make any claim, demand, or application to or for any right or privilege applicable to an officer or employee of [APCo], including but not *Page 1054 limited to, workmen's compensation coverage. . . ."
(Emphasis supplied.) Hicks argues that the unequivocal language of the SLH contract prohibits SLH and its employees from claiming to be employees of APCo. This provision, Hicks argues, undermines APCo's argument that Hicks is a special employee of APCo.
Hicks also argues that other provisions of the labor agreement indicate that APCo had no intention to employ Hicks:
 "Wages. The wages to be paid and the fringe benefits to be provided by the contractor [SLH]
shall be those provided in the current local labor agreement between the Union and the currently recognized bargaining representative.
 "Hiring Procedures. The contractor will utilize the job referral facilities of the Union. . . . [The] contractor has the right to reject any job applicant referred by the Union. In the event these referral facilities maintained by the Union are unable to fill [the] requisitions of the contractor . . . the contractor may staff the job in any manner it sees fit and the employees hired in this manner may be used so long as the need for their services exists.
 "Management Rights. The contractor retains full and exclusive authority for the management of its operations and the directions of its work force. . . . [S]uch management rights shall include, but not be limited to . . . the right to hire, fire, transfer, relieve, promote or demote employees; to determine the number of hours per day or per week during which its operation shall be carried on; to assign, accomplish, schedule, reschedule, and withdraw work as required; and all other rights for the full and complete prosecution of the work."
(Emphasis supplied.) Hicks argues that these provisions, and others, demonstrate that APCo had no intention to employ Hicks. Hicks argues that this evidence creates a genuine issue of material fact as to whether an implied contract between Hicks and APCo existed.
This Court has reviewed several cases addressing the issue of whether an implied contract of hire exists to support a finding of special employment. See, e.g., Pinson v. Alabama Power Co.,557 So.2d 1236 (Ala. 1990) (concluding that an implied contract of hire existed); Marlow v. Mid-South Tool Co., 535 So.2d 120
(Ala. 1988) (holding that Mid-South was a special employer without expressly considering the issue of an implied contract of hire); Bechtel v. Crown Central Petroleum Corp.,495 So.2d 1052 (Ala. 1986) (concluding that an implied contract of hire existed and created a special employment relationship);Pettaway v. Mobile Point Mfg. Co., 467 So.2d 228 (Ala. 1985) (not expressly considering the issue of an implied contract of hire but holding that a special employment relationship existed); and Terry v. Read Steel Products, supra (holding that an implied contract of hire existed).
The facts in this case are distinguishable from those presented in Pinson, 557 So.2d 1236 (Ala. 1990), where we held that an implied contract of hire existed between Pinson and Alabama Power Company. In Pinson, there was no evidence that the contract between Ellard and Alabama Power forbade Ellard and its employees from claiming to be an employee or employees of Alabama Power.
This case is also distinguishable from the other cases addressing this issue. In Terry, Pettaway, and Marlow, the plaintiff's general employer was an employment agency or employment service such as Kelly Services, Inc., or Manpower, Inc. In Bechtel, the plaintiff's general employer, Pep Services, Inc., also acted as the bargaining agent for the plaintiff employee, placing her with Crown Central Petroleum Corporation, pursuant to a supply contract. In these cases, the general employer was nothing more than the bargaining agent or employment agent for the plaintiffs. When those plaintiffs contacted Kelly Services, Manpower, or Pep Services, it was not for the purpose of entering into employment with those companies to do the work of those companies; rather, the plaintiffs intended for the general employers to "market" them to secure employment with another, special employer. Once those plaintiffs were presented by the employment services to the special employers, those plaintiffs then entered into *Page 1055 
a contract of hire with those special employers.
This case is distinguishable in that Hicks presented substantial evidence creating a genuine issue of material fact as to whether SLH acted as Hicks's employment agent or broker; Hicks presented evidence that his bargaining agent was his local union. He presented evidence that the union placed him for employment with SLH, where he entered into an employment relationship to perform the work of SLH, which included construction services for APCo. Hicks argues that it was not necessary for SLH to "lend" or "broker" Hicks to APCo; Hicks says he was part of SLH's work force that SLH utilized at the Miller Steam Plant job site. Hicks argues that once he secured employment with SLH, he did not expect or intend SLH to then transfer him to APCo's employ.
Hicks presented evidence to support these arguments. Hicks testified that he was never sent by his union to APCo for employment at the Miller Steam Plant. He stated that he "did not work at the Miller Steam Plant pursuant to any agreement between my union and [APCo] and, to my knowledge, there was no such agreement." Hicks presented evidence that his union assigned him to work with SLH. He was designated solely as an SLH employee on his "Employee's Withholding Exemption Certificates."
Hicks also presented evidence that the insurance carrier for SLH paid his workers' compensation benefits and provided medical benefits as a result of the injury. Hicks testified that his paychecks were from SLH and that he filed his workers' compensation claim through SLH. Hicks further testified:
 "[APCo] did not offer me any benefit or compensation or reward in exchange for doing work for them. The only benefit or compensation that I received for doing work at the Miller Steam Plant [came] from [SLH] pursuant to the agreement that [SLH] had entered into with my [local] union."
The distinction between the type of primary employer in this case and that in the typical labor broker cases requires APCo to produce evidence that Hicks consented to a new employment relationship. Hicks presented substantial evidence creating a genuine issue of material fact as to whether SLH acted as his labor broker; therefore, as a matter of law, Hicks's consent may not be implied under the facts presented in this case.
Our review of cases from other jurisdictions confirms our analysis in this case. See Crawford v. Florida Steel Corp.,478 So.2d 855, 859-60 (Fla.Dist.Ct.App. 1985) (distinguishing between the proof required to show special employment where the general employer is a temporary labor broker agency and the proof required where it is an independent contractor who performs services; where the plaintiff is employed by the latter, consent must be demonstrated and not implied); Bourettev. Dresser Industries, Inc., 481 A.2d 170, 172-73 (Me. 1984) (rejecting a control test for determining special employment and holding that, where the general employer is an independent contractor who performs services for the purported special employer, proof of the employee's consent to the new employment relationship is required even where the purported special employer controls the work of the plaintiff); Crain v. WebsterElectric Cooperative, 568 S.W.2d 781, 791 (Mo.App. 1978) (holding that consent to a special employment relationship "cannot be inferred merely from the fact that the employee obeyed the commands of his master in entering the services of another"; the employee's consent must be express, "informed and deliberate," to create an implied contract of hire with the alleged special employer); Rademaker v. Archer Daniels MidlandCo., 310 Minn. 240, 247 N.W.2d 28, 32 (1976) (distinguishing between labor broker cases where the employee's consent to the special employment may be inferred and cases in which the primary employer is a contractor offering a service, where "there must be actual indicia of consent" to the new relationship rather than continued obedience to the primary employer); Loden v. Getty Oil Co., 316 A.2d 214, 218
(Del.Super.), aff'd, 326 A.2d 868 (Del. 1974) (holding that, where the plaintiff was employed by an independent contractor who performed services for Getty, no implied contract of hire existed between the plaintiff and Getty, even though Getty *Page 1056 
presented evidence that it controlled numerous aspects of the plaintiff's work); Latham v. Technar, Inc., 390 F. Supp. 1031,1039 (E.D.Tenn. 1974) (holding that the plaintiff must have knowledge of, and must consent to, a special employment relationship; the mere fact that her activities may have been controlled by the new master is not sufficient to create a new relationship in the absence of an express or implied contract);Clark v. Luther McGill, Inc., 240 Miss. 509, 127 So.2d 858, 862
(1961) (holding that the employee must consent to become the employee of the purported special employer before a contract of hire may be implied); Selid Construction Co. v. Guarantee Ins.Co., 355 P.2d 389, 393 (Alaska 1960) (holding that consent of an employee to a change in employers cannot be implied merely from his obedience to the orders of his master to serve another).
Reviewing the evidence in a light most favorable to Hicks, the nonmovant, we conclude that there is a genuine issue of material fact, which must be resolved by the trier of fact, as to whether there was an implied contract of hire between APCo and Hicks and thus as to whether APCo is a special employer of Hicks. The summary judgment is therefore due to be reversed and the case remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MADDOX, SHORES, ADAMS, HOUSTON and KENNEDY, JJ., concur.
[1] Hicks presented evidence that he filed his claim for worker's compensation benefits with SLH. He testified that he contacted SLH when he needed additional care and that SLH then told him which doctor to see. Although APCo presented evidence that it procured and paid for the workers' compensation insurance policy pursuant to which Hicks's benefits were paid, the policy was issued in the name of SLH, not APCo.