Franklin James Key filed an action against Maytag Corporation and its Magic Chef division, alleging that he injured his thumbs while operating a folding machine on the premises of Magic Chef. The action also named as defendants Feldman Inc., the manufacturer of the machine, and Mike Cruise, the safety and health coordinator for Magic Chef.
Although the complaint is less than clear, Key attempted to state a cause of action against Magic Chef for negligence, wantonness, *Page 98 
and liability under the Alabama Extended Manufacturer's Liability Doctrine. Magic Chef answered the complaint and filed affirmative defenses, including the defense that it was Key's special employer at the time he sustained the injury and was, therefore, immune from suit pursuant to § 25-5-53, Code 1975. Magic Chef filed a motion for summary judgment, based on the immunity defense. The motion was granted.
Key's complaint accused Mike Cruise of "willfully fail[ing] to maintain, supply, and preserve guards, safety devices, and safety equipment on machinery as required by law." It appears that Key was attempting to state a cause of action against Cruise under the co-employee theory. Cruise filed a motion for summary judgment. The trial court granted the motion, noting that Key had failed to file any affidavit or evidence in opposition to Cruise's motion.
Feldman filed a motion to dismiss the counts against it. The trial court denied the motion, but limited the trial to three counts. The remaining counts were count three, which requested damages for negligent and/or wanton maintenance, supply and entrustment of machinery; count four, which alleged negligent, wanton, or intentional failure to design, construct, maintain, or build the subject machinery and equipment system in a reasonably safe manner or condition; and count five, which alleged that Feldman manufactured, designed, sold, or placed in use and in commerce machinery in an unreasonably dangerous and defective condition.
Trial was had on the matter. Following the presentation of Key's evidence, Feldman moved that the trial court grant a directed verdict. The trial court granted the motion.
Key appeals and asserts that the trial court erred in entering summary judgment in favor of Magic Chef and Cruise and in directing a verdict in favor of Feldman. This case is before this court pursuant to § 12-2-7(6), Code 1975.
The record reflects that in February 1992 Key applied for temporary employment with Temporary Resources, Inc. In March 1992 he was assigned to work at Magic Chef. The agreement between Temporary Resources and Magic Chef provided that Temporary Resources would pay Key $4.45 per hour to work in the production department at Magic Chef. Magic Chef paid Temporary Resources a rate of $6.45 per hour for Key's services. Temporary Resources used the $2.00 differential to pay unemployment taxes, Social Security taxes, and workmen's compensation insurance. It also included overhead and profit.
Key began working for Magic Chef on March 10, 1992. He reported directly to the Magic Chef plant and performed all of his duties on its premises. He was supervised and given instructions exclusively by employees of Magic Chef. Magic Chef had an agreement with Temporary Resources that it could fire Key and request a replacement.
Key's job at Magic Chef was to operate a machine known as a "folder." He would insert a piece of sheet metal into the machine, push two thumb buttons on the front of the machine, causing it to function and bend the sheet metal into the shape of a frame for a microwave oven. Dennis Reeder, Key's supervisor, instructed Key how to operate the machine safely. He explained to Key that the two buttons on the front of the machine had to be pressed simultaneously in order for the machine to begin its cycle.
On March 11, 1992, Key's thumbs were injured. There were no witnesses to the injury. He testified at trial that he was startled by a tow motor coming from behind him. He turned his head to look, and his body "kind of bumped" the left button. His thumbs were in the machine and were mashed when the machine started operating. He spent one night in the hospital. His medical bills were covered by workmen's compensation, and he received temporary total disability benefits while recuperating. He was released to return to work approximately seven weeks after the injury.
Prior to Key's accident, Reeder had never known the machine to operate with only one button. Reeder had no knowledge of any alteration to the wiring or structure of the machine. Alan Mitchum, the maintenance manager for Magic Chef, was not aware of the machine ever being rewired or remodeled or having the safety buttons altered in any *Page 99 
way. Stephen Chandler, who worked in the plant for approximately 15 years, testified that to his knowledge the machine had not been altered in any manner prior to Key's accident. Daniel Cash, vice-president of operations for Feldman, testified at trial that he did not know of any alterations made by Magic Chef to the machine after Magic Chef purchased it from Feldman.
Both buttons would have to be depressed simultaneously for a period of time in order for the machine to begin its cycle. Once the arms of the machine came down and clamped into place, then the buttons could be released, but the machine would still finish the cycle. If one of the buttons was released before the arms came down in the middle of the cycle, the machine would stop. This was a safety feature to prevent crushed hands. Chandler testified that there were small guards or rings around the buttons and that the buttons were recessed; therefore, they could not be depressed if someone leaned against them. Chandler was not aware of the machine ever being operated by pushing only one button. After the accident, Reeder tested the machine, running it through its cycle several hundred times. During the test he attempted to operate the machine by pressing only one of the two buttons, but he was unable to get the machine to operate unless both buttons were pressed.
Mike Cruise began working for Magic Chef as the safety and health coordinator approximately eight months prior to Key's accident. Cruise never supervised Key and did not know who he was until after the accident. He did not know where he worked in the plant or what his job responsibilities were. He was not in the plant when the accident occurred.
Cruise was not aware of any alleged need for a safety guard or device on the machine. He had no knowledge that any safety device was removed from the machine, nor did he have any knowledge that the machine had been altered in any way prior to Key's accident. No injuries had occurred on the machine previously. It was his understanding that the machine was in the same condition it was in when purchased years earlier.
Key initially asserts that the trial court erred in entering summary judgment in favor of Magic Chef. He insists that he was not an employee of Magic Chef. He contends, therefore, that the trial court erred in finding Magic Chef to be immune from liability.
The issue to be resolved is whether an employee-employer relationship existed as a matter of law between Key and Magic Chef within the meaning of the Alabama Workmen's Compensation Act. If Magic Chef was Key's employer at the time of the injury, then Key's tort claims against Magic Chef are barred by § 25-5-53, Code 1975.
Section 25-5-53, Code 1975, provides in pertinent part, the following:
 "The rights and remedies herein granted to an employee shall exclude all other rights and remedies of said employee, his personal representative, parent, dependents or next of kin, at common law, by statute or otherwise on account of said injury, loss of services or death. Except as provided in this article and article 2, as the case may be, of this chapter, no employer included within the terms of this chapter shall be held civilly liable for any personal injury to or death of any workman who is an employee of the employer and whose injury or death is due to an accident while engaged in the service or business of the employer, the cause of which accident originates in the employment."
In Terry v. Read Steel Products, 430 So.2d 862 (Ala. 1983), the supreme court held that a defendant could be a "special employer" under the workmen's compensation act and be held responsible for workmen's compensation, but immune from tort liability, for injuries sustained by an employee. In that case the supreme court adopted a three-pronged test to determine who is a "special employer":
 " 'When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if
 " '(a) the employee has made a contract of hire, express or implied, with the special employer; *Page 100 
 " '(b) the work being done is essentially that of the special employer; and
 " '(c) the special employer has the right to control the details of the work.
 " 'When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation. . . .' "
Terry, quoting 1C A. Larson, The Law of Workmen's Compensation, § 48 (1980).
Key does not dispute that his relationship with Magic Chef met the second and third condition of the Terry test. He insists, however, that Magic Chef failed to prove that he had a "contract of hire, express or implied," with Magic Chef.
It is undisputed that Key applied for temporary employment with Temporary Resources and that Temporary Resources assigned him to Magic Chef. Magic Chef paid Temporary Resources for his services and Temporary Resources paid Key, but at a lesser rate. The supreme court has previously determined that a "special employer-employee" relationship exists when the general employer is an employment agency or employment service which furnishes employees under contract, "such as Kelly Services, Inc., or Manpower, Inc." Hicks v. Alabama Power Co.,623 So.2d 1050 (Ala. 1993). See Marlow v. Mid-South Tool Co.,535 So.2d 120 (Ala. 1988); Bechtel v. Crown Central PetroleumCorp., 495 So.2d 1052 (Ala. 1986); Pettaway v. Mobile Paint Mfg.Co., 467 So.2d 228 (Ala. 1985); Terry.
In Hicks and Gaut v. Medrano, 630 So.2d 362 (Ala. 1993), the supreme court expounded on its previous holdings concerning the existence of a special employer-employee relationship when the general employer is an employment agency or service. It specifically found that under these circumstances, the employee had an implied contract with the special employer. In Hicks, the supreme court stated:
 "In these cases [the cases cited infra], the general employer was nothing more than the bargaining agent or employment agent for the plaintiffs. When those plaintiffs contacted Kelly Services, Manpower, or Pep Services, it was not for the purpose of entering into employment with those companies to do the work of those companies; rather, the plaintiffs intended for the general employers to 'market' them to secure employment with another, special employer. Once those plaintiffs were presented by the employment services to the special employers, those plaintiffs then entered into a contract of hire with those special employers."
When there is no genuine issue as to a material fact and the defendant is entitled to a judgment as a matter of law, summary judgment is proper. Bechtel. When determining if there is a general issue of a material fact, this court must review the record in a light most favorable to the non-moving party and must resolve all reasonable doubts against the movant. Bechtel.
There was no genuine issue of a material fact. Magic Chef was entitled to a judgment as a matter of law. The trial court's summary judgment in favor of Magic Chef was appropriate.
Key next asserts that the trial court erred in entering summary judgment in favor of Mike Cruise.
It appears from Key's amended complaint that he was attempting to state a cause of action against Cruise as a co-employee for "willful conduct" as defined under §25-5-11(c), Code 1975. That section defines "willful conduct" in the following pertinent manner:
 "(1) A purpose or intent or design to injure another; and if a person, with knowledge of the danger or peril to another, consciously pursues a course of conduct with a design, intent and purpose of inflicting injury, then he or she is guilty of 'willful conduct.'
 "(2) The willful and intentional removal from a machine of a safety guard or safety device provided by the manufacturer of the machine with knowledge that injury or death would likely or probably result from the removal. . . .
". . . .
 "(4) Willful and intentional violation of a specific written safety rule of the employer *Page 101 
after written notice to the violating employee by another employee. . . ."
Cruise filed an affidavit in support of his motion. Among other things, he stated that he did not intend for Key to be injured, nor did he ever remove any safety guards or devices from the machine. He did not violate any safety rules and did not know why he was a defendant in the action, other than the fact that he had general safety responsibilities associated with his position with Magic Chef.
Key did not present any evidence in opposition to Cruise's motion. There was no evidence to support Key's assertion. Summary judgment in favor of Cruise was appropriate.
Key finally asserts that the trial court erred in directing a verdict in favor of Feldman.
The standard of review applicable to a directed verdict motion is whether the nonmovant has presented sufficient evidence to allow submission of the case or issue to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350
(Ala. 1992). The nonmovant must present substantial evidence supporting each element of his cause of action. Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870 (Ala. 1989).
In order to establish liability under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), Key must prove:
 "[H]e suffered injury or damages to himself or his property by one who sold a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if
 "(a) the seller was engaged in the business of selling such a product, and
 "(b) it was expected to, and did, reach the user or consumer without substantial change in the condition in which it was sold."
Atkins v. American Motors Corp., 335 So.2d 134 (Ala. 1976).
Key had the burden of proving that the machine was in a defective condition when it left Feldman's control. "Without evidence to support the conclusion that the product was defective and/or unreasonably dangerous when it left the hands of the seller, the burden is not sustained." Jordan v. GeneralMotors Corp., 581 So.2d 835 (Ala. 1991).
Key presented no evidence, much less substantial evidence, that the machine was in a defective condition unreasonably dangerous to him. Moreover, he failed to show that the machine had not been substantially changed in any manner since it was sold by Feldman to Magic Chef. The only evidence that Key presented was that he sustained an injury while operating the machine. Such evidence fails to support a claim under the AEMLD. Jordan. The entry of the directed verdict was appropriate.
The judgments of the trial court are affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
AFFIRMED.
All the judges concur.