BRYAN, Judge.
The Salvation Army seeks a writ of mandamus ordering the Etowah Circuit Court to enter a summary judgment in its favor with respect to Roy Williams’s tort claims against it. The Salvation Army contends that it is immune to those claims under the exclusive-remedy provisions of the Alabama Workers’ Compensation Act, § 25-5-1 et seq., Ala.Code 1975 (“the Act”). We grant the petition and issue the writ.
Williams was employed by First Choice Personnel, LLC (“First Choice”), a temporary-employment agency. In September 2006, First Choice assigned Williams to work for The Salvation Army, a client of First Choice. Williams worked as a general laborer for The Salvation Army for approximately the next 10 weeks. On November 21, 2006, Williams was allegedly injured in an automobile accident while performing work for The Salvation Army.
On October 2, 2007, Williams sued First Choice and The Salvation Army. Williams alleged a claim for workers’ compensation benefits against First Choice, and he alleged claims of negligence and wantonness against The Salvation Army. The Salvation Army filed an answer asserting, among other things, that “the claims in [Williams’s] Complaint are barred by the exclusivity provisions of the ... Act.” On April 9, 2010, The Salvation Army filed a motion for a summary judgment, asserting that it was Williams’s “special employer” under the Act and, therefore, that the exclusive-remedy provisions of the Act bar Williams’s tort claims against The Salvation Army. Following a hearing, the trial court entered an order denying The Salvation Army’s summary-judgment motion. The Salvation Army petitioned the supreme court for a writ of mandamus directing the trial court to enter a summary judgment dismissing the tort claims on the ground that those claims are barred under the exclusive-remedy provisions of the Act. The supreme court then transferred the petition to this court on the ground that the petition fell within this court’s jurisdiction.
“A writ of mandamus is an extraordinary remedy, and it will be ‘issued only *1227 when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.’ Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993). A writ of mandamus will issue only in situations where other relief is unavailable or is inadequate, and it cannot be used as a substitute for appeal. Ex parte Drill Parts & Serv. Co., 590 So.2d 252 (Ala.1991).”
Ex parte Empire Fire & Marine Ins. Co., 720 So.2d 893, 894 (Ala.1998).
“In reviewing the disposition of a motion for summary judgment, ‘we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,’ Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988), and whether the movant was ‘entitled to a judgment as a matter of law.’ Wright v. Wright, 654 So.2d 542 (Ala.1995); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). Evidence is ‘substantial’ if it is of ‘such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala.1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990).”
Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala.1997).
Initially, we address whether we may review, by a petition for a writ of mandamus, the trial court’s denial of The Salvation Army’s summary-judgment motion. The Salvation Army moved for a summary judgment on the ground that it is immune from tort liability under the exclusive-remedy provisions of the Act. “Mandamus review of the denial of a summary-judgment motion ‘grounded on a claim of immunity’ is an exception to the general rule against interlocutory review of the denial of summary-judgment motions. Ex parte Auburn Univ., 6 So.3d 478, 483 (Ala.2008).” Ex parte Simpson, 36 So.3d 15, 22 (Ala.2009) (emphasis omitted) (reviewing by mandamus petition the denial of a summary-judgment motion concerning legislative immunity and immunity under the Noerr-Pennington doctrine, under which “those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct,” Sosa v. DIRECTV, Inc., 437 F.3d 923, 929 (9th Cir. 2006)). See also Ex parte Wood, 852 So.2d 705 (Ala.2002) (reviewing by mandamus petition the denial of a summary-judgment motion grounded on State-agent immunity).
Citing Ex parte South Carolina Insurance Co., 412 So.2d 269 (Ala.1982), Williams argues that the denial of a summary-judgment motion grounded on a claim of immunity under the exclusive-remedy provisions, as opposed to some other types of immunity, is not reviewable by mandamus petition. In that case, certain defendants, following the denial of their summary-judgment motions, peti *1228 tioned the supreme court for a writ of mandamus, arguing that the Act provided them immunity from the claims against them. The supreme court denied the petition, stating that “it is obvious that the defendants are seeking to do by mandamus that which can be done on appeal” and that “[m]andamus cannot be used as a substitute for appeal.” 412 So.2d at 270. Accordingly, Williams has filed a motion to dismiss the mandamus petition.
However, in two subsequent cases, Ex parte McCartney Construction Co., 720 So.2d 910 (Ala.1998), and Ex parte Progress Rail Services Corp., 869 So.2d 459 (Ala.2003), our supreme court reviewed by a mandamus petition the issue of employer immunity under the Act. Those two cases concerned the denials of motions to dismiss, unlike Ex parte South Carolina Insurance Co., which concerned the denial of a summary-judgment motion. However, whether a claim of immunity is denied following a motion to dismiss or a summary-judgment motion appears to be immaterial to the issue whether such a denial may be reviewed by mandamus. See Ex parte Haralson, 853 So.2d 928, 931 n. 2 (Ala.2003) (“The denial of a motion to dismiss or a motion for a summary judgment generally is not reviewable by a petition for writ of mandamus, subject to certain narrow exceptions, such as the issue of immunity.”); compare, e.g., Ex parte Butts, 775 So.2d 173, 176 (Ala.2000) (reviewing the denial of motion to dismiss grounded on State immunity and State-agent immunity and stating generally that “a petition for a writ of mandamus is an appropriate means for seeking review of an order denying a claim of immunity”); and Ex parte Wood, supra (reviewing by mandamus petition the denial of a summary-judgment motion grounded on State-agent immunity). In light of the holdings in the more recent cases — Ex parte McCartney Construction Co. and Ex parte Progress Rail Services Corp. — we conclude that the trial court’s order denying The Salvation Army’s summary-judgment motion based on its assertion of immunity under the exclusive-remedy provisions of the Act is subject to mandamus review. See also Ex parte Simpson, supra; and Ex parte Wood, supra. Accordingly, we deny Williams’s motion to dismiss the mandamus petition.
In Bechtel v. Crown Central Petroleum Corp., 451 So.2d 793, 795 (Ala.1984), our supreme court concluded that an employer’s immunity under the exclusive-remedy provisions of the Act is an affirmative defense and, therefore, is subject to the pleading requirements of Rule 8(c), Ala. R. Civ. P. In its answer, The Salvation Army generally asserted the exclusive-remedy affirmative defense by stating that “the claims in [Williams’s] Complaint are barred by the exclusivity provisions of the ... Act.” Williams argues, however, that The Salvation Army was required to plead the exclusive-remedy defense with particularity. Williams contends, as he did before the trial court, that The Salvation Army insufficiently pleaded that defense by failing to plead it with particularity, and, consequently, argues Williams, the defense was waived.
In support of his argument that the exclusive-remedy defense must be pleaded with particularity, Williams cites cases concerning the affirmative defense of es-toppel. Our supreme court has stated that estoppel must be pleaded with particularity. RLI Ins. Co. v. MLK Ave. Redevelopment Corp., 925 So.2d 914, 925-26 (Ala.2005); Water Works & Sewer Bd. of Wetumpka v. City of Wetumpka, 773 So.2d 466, 469 (Ala.2000); Ex parte Luverne Geriatric Ctr., Inc., 480 So.2d 562, 568 (Ala.1985); and Kimbrell v. City of Bessemer, 380 So.2d 838, 839 (Ala.1980). Additional *1229 ly, all averments of fraud, including an affirmative defense of fraud, must be pleaded with particularity. Rule 9(b), Ala. R. Civ. P.; and Patterson v. Liberty Nat’l Life Ins. Co., 903 So.2d 769, 782-83 (Ala.2004). However, estoppel and fraud defenses notwithstanding, Rule 8(c) simply requires that affirmative defenses must be “affirmatively set forth” in a responsive pleading. The Committee Comments on the 1973 Adoption of Rule 8 provide:
“Under this rule the prime purpose of pleadings is to give notice....
[[Image here]]
“... Under this rule, ‘plain notice’ of the nature of the defense being raised by the defendant is all that is required at the pleading stage. The facts pertinent to their various claims and defenses may be developed by discovery and pretrial procedures.”
In Brown v. Billy Marlar Chevrolet, Inc., 381 So.2d 191 (Ala.1980), our supreme court addressed whether specific factual allegations must be stated when pleading the affirmative defense of contributory negligence. Our supreme court concluded:
“While Rule 8(c)[, Ala. R. Civ. P.,] provides that, ‘In pleading to a preceding pleading, a party shall set forth affirmatively ... contributory negligence ...,’ we opine that extensive factual allegations of contributory negligence need not be set out in an answer. The answer here in general terms[, simply stating that the plaintiff was contributorily negligent,] is sufficient under the Rule. Cf. American Motorists Ins. Co. v. Napoli, 166 F.2d 24 (5th Cir.1948). See also 5 Wright & Miller, Federal Practice and Procedure, Civil, § 1274.”
381 So.2d at 193. Similarly, in Owings v. Gullett, 437 So.2d 1050, 1053 (Ala.Civ.App.1983), this court concluded that a succinct assertion of the affirmative defense of the statute of limitations complies with Rule 8(c). In light of those cases and the simple requirements of Rule 8(c), we conclude that the exclusive-remedy affirmative defense need not be pleaded with particularity. The Salvation Army’s plain assertion in its answer that the defense applies was sufficient.
We next address another procedural argument raised by Williams. Williams argues that The Salvation Army untimely submitted supplemental materials in support of its summary-judgment motion. Therefore, Williams argues, those materials should not have been considered by the trial court and should not be considered by this court. The Salvation Army filed its summary-judgment motion on April 9, 2010. The trial court ultimately scheduled a hearing on that motion for August 25, 2010. On August 18, 2010, seven days before the scheduled hearing, The Salvation Army filed a “supplement” to the summary-judgment motion. The supplement contained a reiteration of the arguments that The Salvation Army had made in its summary-judgment motion and the submission of the deposition testimony of Majorie Robertson, an officer of First Choice. On August 23, 2010, Williams filed his response to the April 9, 2010, summary-judgment motion, and he also moved to strike the supplement on the basis that it was untimely filed. In support of his response to the summary-judgment motion, Williams submitted portions of Robertson’s deposition, the very deposition that he moved to strike. The next day, on August 24, 2010, The Salvation Army filed a reply to Williams’s filings of the previous day, responding to Williams’s arguments. On August 25, 2010, Williams moved to strike as untimely The Salvation’s Army’s reply that had been filed on the previous day. On August 25, the trial court held a hearing on the summary-judgment motion. The trial court has nev *1230 er indicated whether it ruled on the motions to strike.
 Williams contends that the filing of the supplement seven days before the hearing and the filing of the reply the day before the hearing violated Rule 56(c)(2), Ala. R. Civ. P. That rule provides that “[t]he motion for summary judgment, with all supporting materials, including any briefs, shall be served at least ten (10) days before the time fixed for the hearing,” unless the parties consent to less than 10 days’ notice. However, mere noncompliance with the notice requirement of Rule 56(c)(2) does not constitute reversible error absent a showing of prejudice. As our supreme court stated in Hilliard v. SouthTrust Bank of Alabama, N.A., 581 So.2d 826, 828 (Ala.1991):
“Once a party shows noncompliance with the notice requirement, the party then must show that the trial court abused its discretion by failing to comply with that requirement. To demonstrate an abuse of discretion, the party need only come forth with any showing that the denial of the full 10-day notice period worked to his prejudice.”
See also Peebles v. Mooresville Town Council, 985 So.2d 388, 392 (Ala.2007).
Even assuming, without deciding, that Rule 56(c)(2) was violated, we conclude that Williams has failed to establish that he was prejudiced by the noncompliance. In his answer to The Salvation Army’s mandamus petition, Williams acknowledges that, “regardless of whether the trial court did, or did not, strike” the allegedly untimely materials, he was entitled to prevail on the summary-judgment motion. Williams’s answer at 23 n. 7 (emphasis added). Thus, Williams seems to concede that the submission of the disputed materials did not prejudice him. Moreover, in the supplement, The Salvation Army merely reiterated the arguments made earlier in its timely summary-judgment motion and submitted Robertson’s deposition in further support of its arguments. When Williams subsequently filed his response to the summary-judgment motion, he also submitted portions of Robertson’s deposition in support of his arguments against entering a summary judgment. Accordingly, we do not see how Williams could have been prejudiced by the supplement. Regarding The Salvation Army’s reply filed the day before the hearing, that reply simply responded to the arguments made by Williams in his response to the summary-judgment motion. Williams clearly suffered no prejudice by the filing of the reply.
We next address the substantive issue in this case: whether The Salvation Army is immune to Williams’s tort claims under the exclusive-remedy provisions of the Act. “[T]he Act is the exclusive remedy when an employee is injured in an accident proximately resulting from, and that occurred while the employee was engaged in, the actual performance of the duties of his or her employment.” Ex parte Shelby County Health Care Authority, 850 So.2d 332, 338 (Ala.2002); see §§ 25-5-52 and -53, Ala.Code 1975. It is undisputed that First Choice, as a temporary-employment agency, is Williams’s “general employer.” The Salvation Army argues that it, as the client of First Choice, is also Williams’s employer under the Act, i.e., that it is Williams’s “special employer.” If The Salvation Army is Williams’s special employer, then Williams’s tort claims against it are barred by the exclusive-remedy provisions of the Act. That is, any potential claim Williams would have against The Salvation Army would be limited to the rights and remedies provided by the Act.
*1231 In Hicks v. Alabama Power Co., 623 So.2d 1050, 1052 (Ala.1993), our supreme court recited the applicable law:
“In Terry v. Read Steel Products, 430 So.2d 862, 865 (Ala.1983), this Court first held that a defendant could be a ‘special employer’ under [the] Act, and be held responsible for worker’s compensation but immune from tort liability for injuries sustained by an employee. We adopted the following three-pronged test to determine who is a ‘special employer’:
“ “When a general employer lends an employee to a special employer, the special employer becomes liable for workmen’s compensation only if
“ ‘(a) the employee has made a contract of hire, express or implied, with the special employer;
“ ‘(b) the work being done is essentially that of the special employer; and
“ ‘(c) the special employer has the right to control the details of the work.
“ ‘When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen’s compensation....’
“Terry, 430 So.2d at 865, quoting 1C A. Larson, The Law of Workmen’s Compensation, § 48 (1980).”
Williams acknowledges that he conceded before the trial court that The Salvation Army satisfied the second and third prongs of the test set out in Terry v. Read Steel Products, 430 So.2d 862 (Ala.1983); there appears to be no dispute concerning those two factors. The evidence indicates that the work Williams performed in this case was essentially that of The Salvation Army and that The Salvation Army had the right to control the details of his work. The parties dispute, however, whether Williams had a contract for hire with The Salvation Army. The Salvation Army contends that an implied contract for hire existed, but Williams argues that no such contract existed.
In several cases, Alabama appellate courts have addressed the issue whether clients of temporary-employment agencies were special employers. In Key v. Maytag Corp., 671 So.2d 96 (Ala.Civ.App.1995), this court discussed the law in this area:
“The supreme court has previously determined that a ‘special employer-employee’ relationship exists when the general employer is an employment agency or employment service which furnishes employees under contract, ‘such as Kelly Services, Inc., or Manpower, Inc.’ Hicks v. Alabama Power Co., 623 So.2d 1050 (Ala.1993). See Marlow v. Mid South Tool Co., 535 So.2d 120 (Ala.1988); Bechtel v. Crown Central Petroleum Corp., 495 So.2d 1052 (Ala.1986); Pettaway v. Mobile Paint Mfg. Co., 467 So.2d 228 (Ala.1985); Terry [v. Read Steel Prods., 430 So.2d 862 (Ala.1983) ].
“In Hicks and Gaut v. Medrano, 630 So.2d 362 (Ala.1993), the supreme court expounded on its previous holdings concerning the existence of a special employer-employee relationship when the general employer is an employment agency or service. It specifically found that under these circumstances, the employee had an implied contract with the special employer. In Hicks, the supreme court stated:
‘“In these cases [concerning temporary-employment agencies or employment-placement agencies], the general employer was nothing more than the bargaining agent or employment agent for the plaintiffs. When those plaintiffs contacted Kelly Services, Manpower, or Pep Services, it was not for the purpose of entering into em *1232 ployment with those companies to do the work of those companies; rather, the plaintiffs intended for the general employers to “market” them to secure employment with another, special employer. Once those plaintiffs were presented by the employment services to the special employers, those plaintiffs then entered into a contract of hire with those special employers.’
“[623 So.2d at 1054-55.]”
671 So.2d at 100.
In Key, this court determined that Magic Chef, a client of Temporary Resources, a temporary-employment agency, was a special employer under the Act. In its analysis, this court noted salient facts present in that case that had also been present in earlier cases finding clients of temporary-employment agencies to be special employers: “It is undisputed that Key applied for temporary employment with Temporary Resources and that Temporary Resources assigned him to Magic Chef. Magic Chef paid Temporary Resources for his services and Temporary Resources paid Key, but at a lesser rate.” Id.
In Gaut v. Medrano, 630 So.2d 362, 366 (Ala.1993), our supreme court succinctly explained:
“Terry v. Read Steel ... and three of the cases following it [Means v. International Systems, Inc., 555 So.2d 142 (Ala.1989); Marlow v. Mid South Tool Co., 535 So.2d 120 (Ala.1988); and Pettaway v. Mobile Paint Mfg. Co., 467 So.2d 228 (Ala.1985),] have involved general employers that were unambiguously temporary employment placement agencies. Terry and Pettaway were placed with them special employers by Manpower, Inc.; Marlow, by Kelly Services, Inc.; and Means, by Long’s Temporary Services, Inc. In such cases, the employee applies to the general employer for the specific purpose of temporary placement with special employers and thus necessarily agrees to a contract of hire with the special employer.”
The facts in this case reflect a typical situation in which an implied contract for hire has been found to exist between the client of a temporary-employment agency, and an employee. First Choice, a temporary-employment agency, hired Williams to perform general labor for clients of First Choice. As such, First Choice was the “bargaining agent” or “employment agent” of Williams. Key, 671 So.2d at 100. First Choice assigned Williams to work for The Salvation Army, and he worked for The Salvation Army under its control. Accordingly, there was an implied contract for hire between Williams and The Salvation Army, thus satisfying the first prong of the Terry test. The facts of this case are substantially similar to those of the typical temporary-employment cases cited above. As noted, there is no dispute that the other two prongs of the Terry test were satisfied. Accordingly, we determine that The Salvation Army was Williams’s special employer.
Williams cites several factors that he says suggest that he did not have a contract for hire with The Salvation Army. Several of those factors highlight the employment relationship that Williams had with First Choice in an attempt to suggest that there was not an employment relationship between Williams and The Salvation Army. For example, Williams notes his own testimony stating that he “worked for First Choice” as evidence indicating that he considered himself to be an employee of First Choice. Clearly, First Choice was Williams’s general employer. However, the pertinent issue is whether Williams was also an employee of The Salvation Army under the Terry test, i.e., whether The Salvation Army was Williams’s special employer. Whether *1233 Williams considered himself to be an employee of First Choice does not alter our analysis.
Similarly, certain provisions contained on Williams’s time sheet limiting the scope of his employment with The Salvation Army do not negate his status as an employee of The Salvation Army. For example, Williams’s time sheet, which recited terms of the agreement between First Choice and The Salvation Army, contained a provision stating that The Salvation Army could not allow Williams to drive an automobile without obtaining First Choice’s written permission. However, in Terry, a contract for hire was determined to exist despite a similar provision. 430 So.2d at 864, 866. See also Pettaway v. Mobile Paint Mfg. Co., 467 So.2d 228, 228, 230 (Ala.1985) (holding that a contract for hire existed despite a provision requiring written permission from the temporary-employment agency before the employee could handle vehicles or machinery).
Williams also relies on factors that, in other cases involving similar factors, did not prevent a determination that a contract for hire existed. For example, Williams notes that First Choice had previously assigned him to other clients before assigning him to The Salvation Army. However, our supreme court has found a contract for hire to exist when a temporary-employment agency had previously assigned an employee to other clients. See Pettaway, 467 So.2d at 228 (“On several occasions, Manpower sent Pettaway to different jobsites for the purpose of providing temporary labor.”). Williams also contends that the roughly 10-week period during which he worked for The Salvation Army is a relatively brief period that weighs against a determination that a contract for hire was formed. However, this fact is unpersuasive because a contract for hire has been found to exist in cases in which a temporary employee has been on the job for as little time as three days, Marlow v. Mid South Tool Co., 535 So.2d 120, 122-24 (Ala.1988), or two weeks, Pettaway, 467 So.2d at 229-30.
Lastly, we briefly address Williams’s contention that The Salvation Army has impermissibly presented an argument to this court that was not presented to the trial court. An appellate court cannot grant relief based on an argument presented for the first time to the appellate court. Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992). In this case, the allegedly new “argument” is not an argument but rather a single factual statement contained in Robertson’s deposition, namely her testimony indicating that The Salvation Army controlled Williams’s pay rate. The Salvation Army cites that evidence in support of its argument that it was Williams’s special employer, an argument that The Salvation Army presented to the trial court. Therefore, Williams’s argument on this issue has no merit.
In conclusion, we deny Williams’s motion to dismiss the petition for a writ of mandamus. The material facts establish that The Salvation Army was Williams’s special employer within the meaning of the Act. Therefore, under the exclusive-remedy provisions of the Act, The Salvation Army is immune to Williams’s tort claims. Accordingly, we grant The Salvation Army’s petition for the writ of mandamus, issue the writ, and direct the trial court to enter a summary judgment in favor of The Salvation Army with respect to Williams’s tort claims against it.
PETITION GRANTED; WRIT ISSUED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.