AMERICAN TELEPHONE & TELEGRAPH COMPANY, *A Corporation, et al.*

*v.*

OHIO VALLEY SAND COMPANY, *A Corporation*

(No. 10065)

Submitted September 15, 1948. Decided November 16, 1948.

HAYMOND and FOX, JUDGES, concurring.

*Spilman, Thomas & Battle* and *R. S. Spilman, Jr.* and *C. E. Copen,* for plaintiffs in error.

*Walter F. Ball,* and *Handlan, Garden, Matthews & Hess,* for defendants in error.

KENNA, JUDGE:

This action of trespass on the case was brought in the Circuit Court of Putnam County by American Telephone & Telegraph Company of West Virginia, as owner, and American Telephone & Telegraph Company, a New York Corporation, as lessee, against Ohio Valley Sand Company, seeking to recover damages for the destruction by the defendant of their transmission lines across the Kanawha River near Red House on the north bank and Winfield on the south bank. At the conclusion of the plaintiffs' testimony the defendant's motion to strike was sustained and from a directed verdict and judgment in favor of the defendant this writ of error was granted.

In the year 1941 the Ohio Valley Sand Company owned and operated a floating nonself-propelled derrick with a boom eighty feet long. At about noon on the 10th of November, 1941, this derrick was being towed down the Kanawha River, the boom in practically a vertical position so that when passing Winfield it struck the wires of the plaintiff companies there crossing the river in four different levels of ten wires each, the lowest being, at the point of its greatest sag, approximately four to six feet above the clearance required from the river at pool stage by the Office of the United States Engineer. According to the plaintiffs' testimony the resultant damage cost $6,800.00 to repair.

Upon reviewing testimony on a sustained motion to strike it is to be looked upon favorably to the litigant against whose interests the motion operates, giving him the benefit of all reasonable inferences. Our statement of fact will be upon that basis.

The principal place of business of the Ohio Valley Sand Company was at New Martinsville and in the spring of 1941, as it had done in the spring of 1940, it leased to J. W. Harmon the derrick in question together with certain conveyors, bins and lesser equipment, the term of the lease being until cold weather made the operation of the derrick in Harmon's business impracticable. Harmon's business was the river transportation in barges of slag procured at Weirton from the Standard Slag Company, loading and unloading being a part of the contract to transport. The lease from the defendant company was verbal and provided for a rental royalty on a tonnage basis, there being a fixed monthly minimum. As a part of the understanding Harmon was to receive the services of an engineer, fireman and watchman employed by the Ohio Valley Sand Company upon whose pay roll they were to remain during the period of the lease to Harmon. The Ohio Valley Sand Company was to furnish the necessary fuel, lubricants and other supplies for this derrick. On several occasions representatives of the Ohio Valley Sand Company visited the derrick, though the extent to which they inspected it is not shown. Harmon reported to that company when he moved the derrick from one undertaking to another.

In 1936 the plaintiff companies constructed two steel towers on the opposite banks of the Kanawha River, the one on the north being near Red House and that on the south near Winfield, for the purpose of spanning the river with a section of their transmission lines called "Cuyahoga Falls-Charleston Line." These towers were about eighty feet high and between them were stretched four layers of galvanized steel wire, copper not being of sufficient strength. The total of forty wires was raised between these towers to the height required by the Office

of the United States Engineer, the span being approximately eleven hundred feet in length. Since there is no question of fault on the part of the plaintiff companies raised, we regard it as unnecessary to go into further detail regarding the nature of the construction of their lines although the record is rather complete in that respect.

Early in November, 1941, Harmon agreed to deliver slag at a farm owned by William Blizzard on the south side of the Kanawha River just above Winfield and to a road contractor at Shank's Landing below Winfield. Harmon did not have an available tug or tow boat to move the derrick from its then location together with the slag to the slag's destinations on the Kanawha River. Therefore he employed John Rake who owned and operated a tug that he used for the purpose of towing nonself-propelled boats on the Ohio and Kanawha Rivers. Rake towed the derrick and the barge carrying the slag to the landing at the Blizzard farm and, after the slag shipped to that point had been unloaded, started down river to Shank's Landing. As has been said, the boom of the derrick was about eighty feet high while the clearance between the river and the lines of the plaintiff companies was about sixty-four feet, so that in passing under, the boom tore down the lines.

The defendant below took the position, first, that Owen Berga, the engineer, as well as the fireman and watchman, was the borrowed servant of J. W. Harmon for whose conduct at the time the Ohio Valley Sand Company was not responsible; and, second, that if that were not so, no conduct of theirs was the proximate cause of the destruction of the plaintiffs' property, and, if it did result from negligence it was the intervening negligence of the person in charge of the tug guiding the derrick down river.

It is to be remembered that the contract between the Ohio Valley Sand Company and J. W. Harmon for the lease of the derrick was oral, and, therefore, that its precise meaning and effect is likely more subject to

practical interpretation by the subsequent conduct of the parties thereto than if it were written. What that interpretation was rests of course, first, upon facts and, second, upon the inferences and conclusions to be deduced from those facts by the fact finding tribunal, here a jury. In this jurisdiction it is settled that in cases involving no controversy concerning the actual facts, if different inferences could be drawn therefrom, submission to a jury is nevertheless required. *Hicks, Adm'r.* v. *Southern Ohio Quarries Co.,* 116 W. Va. 748, 182 S. E. 874; *Ketterman* v. *Dry Fork Railroad Co.,* Syl., Point 6, 48 W. Va. 606, 37 S. E. 683. See also: *Rice* v. *Builders Material Co.,* 120 W. Va. 585, 591, 2 S. E. 2d 527. Without question the Ohio Valley Sand Company on November 10, 1941, was the general employer of the engineer, fireman and watchman on the derrick it had rented to Harmon. That being so the presumption is that on that date it was the sole employer of that crew and that the burden of proof rests upon him contending the contrary. *Craft, Adm'x.* v. *The Pocahontas Corp.,* 118 W. Va. 380, 390, 190 S. E. 687; *Standard Oil Co.* v. *Anderson,* 212 U. S. 215, 225, 29 S. Ct. 252, 53 L. ed. 480; *Macale* v. *Lynch,* 110 Wash. 144, 188 P. 517. It would seem plain, under the testimony in this case, that J. W. Harmon had complete control to direct the work to be done, the slag or other material to be handled, and the time and place for the derrick and its crew to be in discharging their duties to him. To this extent he undoubtedly is to be regarded as the employer of Owen Berga, the engineer, and of the fireman and watchman of the derrick. But under the facts as shown by the proof is it necessary to conclude that he could direct and control the engineer in the operation of the engine and the location of the boom involved in that engine's operation and discharge the engineer for failure to comply with his instructions, Could he have directed Berga to increase the steam pressure and the speed of the derrick's performance? Perhaps he could have done so, but we believe that under the facts shown by the testimony in this case that is not a necessary conclusion and consequently that a jury could have found differ-

ently. This derrick was an extremely large and quite valuable machine. It is not shown that Harmon was familiar with its care and operation. Plainly the Ohio Valley Sand Company desired it to be in charge of persons upon whose competence they could rely. It can easily be inferred that they did not wish to leave the selection of the persons in charge of their unusual property to another. If that be true certainly they retained the power to discharge the engineer, the fireman or the watchman for improper conduct. The position of the boom when being moved was obviously a matter of some concern to its owner, for, while it probably is not to be classified as a dangerous instrumentality, its own safety as well as the safety of property within its reach depends largely upon its position. Upright it could damage property above the required clearance of the stream on which it was operating, and with knowledge of the limit of that required clearance its operator stood charged. Of course it may be said that these are matters that involve Harmon's interests. This may be true, but it is also true that a jury could conclude that they involve the interests of the Ohio Valley Sand Company to such an extent that in this record it is not shown that the crew of the derrick entirely ceased being its employees and became entirely the employees of J. W. Harmon. We are therefore of the opinion that the principle known as the "borrowed servant" does not necessarily here apply but that whether or not the crew of the derrick in a special service became entirely or only partly Harmon's employees is a question of fact, as are most of the cases in which this doctrine is invoked. See 35 Am. Jur., 970.

Concerning the doctrine of proximate cause and the contention that the plaintiffs' evidence shows beyond question that the negligence of the operator of the tow caused the injury to plaintiffs' lines and that that negligence unquestionably intervened between any possible negligence of the crew of the derrick and the resultant injury, we wish to say only that that may be true in so far as the negligence of the operator of the tow boat apparently contributed to the final result. That, however,

would not absolve another from liability if as a result of his conduct he could reasonably foresee the intervening cause and the probable consequence. Undoubtedly here that could have been foreseen. All persons operating boats on navigable streams are charged with knowledge of the requirements of the Office of the United States Engineer within that district. This boat had passed under the plaintiff companies' lines on its way up the Kanawha River on the day before the accident. Plainly it did not have the boom of its derrick upright at that time and certainly a jury could reasonably conclude that its crew was then informed concerning the location of the plaintiffs' wires. To reach the opposite conclusion and to say that the plaintiffs' testimony is not sufficient in any manner to charge the crew of the derrick with knowledge of the location of the plaintiffs' lines would ignore the permission granted the plaintiff companies by the Office of the United States Engineer and the immediate previous experience of the derrick's crew.

Based upon the foregoing discussion we are of the opinion that it was error to sustain the defendant's motion to strike the evidence of the plaintiffs and direct a verdict for the defendant because a jury could have inferred from the uncontroverted facts that for the purpose of seeing that the engine of the derrick was operated in such a manner that its boom would be in a proper position to be towed, the crew of the derrick was acting as the servants of the Ohio Valley Sand Company, and that injury to the plaintiffs' property resulted as the proximate cause of their failure to perform that duty. Therefore the judgment of the Circuit Court of Putnam County is reversed, the verdict set aside and a new trial granted the plaintiffs in error.

*Reversed.*

HAYMOND, JUDGE, concurring:

I concur in the decision of the majority to reverse the judgment of the trial court because of its erroneous action in striking the evidence introduced in behalf of the

plaintiff, directing the jury to return a verdict in favor of the defendant, and entering judgment upon the directed verdict. Under the evidence, as disclosed by the record, the question whether the conduct of the engineer in control of the derrick when the boom attachment came in contact with and damaged the transmission wires of the plaintiffs constituted negligence and was the proximate cause of the injury, was a question of fact and the trial court, under proper instructions, should have submitted that issue to the jury. As to the legal status of the engineer, at the time of the collision, and whether he was then acting as the servant of the defendant, his general employer, or as the servant of its lessee Harmon, a different situation is presented. In my opinion the evidence introduced at the trial indicates clearly that he was the servant of the defendant and not the servant of its lessee. On that controlling point the evidence is clear and undisputed and the question of whose servant the engineer was, at the time of the collision, in my judgment, was not for the jury, as the majority holds, but for the court.

The test for determining the status of an employee, as the servant of his general employer or of another person, to whom the employee has been loaned for a time, is whether, with respect to the act or the course of conduct to be performed by him, he is subject to direction and control of his general employer or to direction and control of the person to whom he has been loaned. 35 Am. Jur., Master and Servant, Section 541. When a servant has been loaned, in a particular situation, by one person to another person, the question as to whose servant he is, though ordinarily one of fact to be determined by the jury, sometimes becomes one of law for the court. *Ramsey* v. *New York Central Railroad Company*, 269 N. Y. 219, 199 N. E. 65, 102 A. L. R. 511. When the evidence upon an issue is not conflicting and only one inference may be drawn by reasonable minds from undisputed facts, the issue becomes one of law for the court. *Adkins* v. *Aetna Life Insurance Company*, 130 W. Va. 362, 43 S. E. 2d 372; *Gilkerson* v. *Baltimore & Ohio Railroad Company*, 129 W. Va. 649, 41 S. E. 2d 188; *Cooper* v. *Pritchard*

*Motor Company,* 128 W. Va. 312, 36 S. E. 2d 405. In my opinion this rule applies to the undisputed facts disclosed by the evidence which, from the record in this case, shows beyond question, and to the exclusion of any reasonable inference to the contrary, that the engineer at the time the boom struck and damaged the transmission wires was subject to direction and control of the defendant and, in consequence, its servant for whose acts it is responsible. The refusal of the trial court to determine that question as a question of law is, in my opinion, an additional ground upon which reversal of the judgment should be based. For that reason I disagree with the majority in holding, under the evidence produced at the trial, as disclosed by the record, that the question is one of fact for the jury instead of one of law for the court.

I am authorized to say that Judge Fox agrees with the views expressed in this concurring opinion.