No. 86,708

ULYSSES SCOTT, *Appellant*, v. ALTMAR, INC., *Appellee.*
(38 P.3d 673)

*Christopher P. Sweeny,* of Turner & Sweeny, of Kansas City, Missouri, argued the cause and was on the brief for appellant.

*Michael B. White,* of Harris, McCausland & Schmitt, P.C., of Kansas City, Missouri, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This special employer construction accident case is before us on an appeal from summary judgment. Plaintiff Ulysses Scott was employed by Davlin Services, Inc., (Davlin) a temporary employment agency. He was sent by Davlin to a school construction job site to work as a manual laborer for the defendant Altmar, Inc., the general contractor. Scott was injured by a falling steel I-beam. He recovered workers compensation benefits from Davlin Services and later filed a personal injury tort action against Altmar. The district court sustained Altmar's summary judgment motion, finding that Altmar was Scott's special employer and, therefore, immune from suit under K.S.A. 44-501(b). Scott appeals.

Our jurisdiction is under K.S.A. 20-3018(c) (transfer from the Court of Appeals on our own motion).

The question is whether the district court was correct in holding that as a matter of law, Scott and Altmar had an implied contract of employment.

Finding no error, we affirm.

## FACTS

Altmar contracted with Davlin to provide manual laborers for Altmar on an elementary school construction project. Scott was asked to place blocks on the ground so that an Altmar employee could lower a steel I-beam onto the blocks with a forklift. Scott put the blocks in position. As he stood up to back away, the forklift moved suddenly, causing the I-beam to fall

Davlin, as a temporary employment agency, assigned Scott to his place of work. Upon his arrival at the job site each day, Scott would perform work that was to be done under Altmar's general

contract, and under the direction, control, and supervision of Altmar. Although an Altmar supervisor set a time for Davlin employees to arrive at the site, Altmar did not control when the Davlin employees would arrive at or depart from the job site. In several cases Davlin workers did not have their own transportation and had to rely on a Davlin van or other vehicle to transfer them to and from the site. When Davlin employees arrived on site, an Altmar superintendent or foreman set out the course of their day's work.

Davlin's agreement with Altmar prohibited Altmar from using Davlin workers to operate dangerous machinery or equipment not covered by Altmar's insurance without Davlin's consent. Altmar did not allow unskilled manual laborers, like Scott, to operate machinery or power tools because of their lack of experience and training. Although a member of Davlin's management stopped by the job site one day, that person did not give instructions or directions to anyone at Altmar regarding either how to perform work under the general contract or how to use Davlin's employees. Davlin was responsible for all tax withholdings on Davlin workers, and only Davlin had the right to fire Davlin workers. Altmar did not consider Davlin workers to be Altmar employees.

## DISCUSSION

Scott contends that the district court erred in reasoning that his tort claim against Altmar was barred under K.S.A. 44-501(b) as a matter of law and in sustaining Altmar's motion for summary judgment.

Before moving on to our analysis of the tension between Scott's tort claim and the K.S.A. 44-501(b) workers compensation exclusive remedy bar, a comment on summary judgment is in order. Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as matter of law. K.S.A. 2000 Supp. 60-256(c). Summary judgment decisions are reviewed de novo. See *Mark Twain Kansas City Bank v. Kroh Bros. Dev. Co.*, 250 Kan. 754, Syl. ¶ 2, 863 P.2d 355 (1992). We resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is

sought. *Bergstrom v. Noah,* 266 Kan. 847, 871, 974 P.2d 531 (1999).

The essential facts here are documented in the parties' summary judgment submissions. We agree with the district court that Scott's statement of additional facts does not preclude summary judgment. Our standard of reviewing summary judgment is well established. See, *e.g., Mitzner v. State Dept. of SRS,* 257 Kan. 258, 260-61, 891 P.2d 435 (1995). We conclude that no genuine issues of material fact remain.

The controlling statute here, K.S.A. 44-501(b), says in part:

"Except as provided in the workers compensation act, no employer, or other employee of such employer, shall be liable for any injury for which compensation is recoverable under the workers compensation act . . . ."

Under the K.S.A. 44-501(b) exclusive remedy provision, if an employee can recover workers compensation for an injury, he or she is barred from bringing a negligence suit for damages against an employer. *Dillard v. Strecker,* 255 Kan. 704, 708-09, 877 P.2d 371 (1994). The Workers Compensation Act is to be liberally construed in favor of bringing workers within its provisions. *Robinett v. The Haskell Co.,* 270 Kan. 95, 101, 12 P.3d 411 (2000). We have noted that " 'no different rule of construction can be adopted where an injured workman for reasons which he regards sufficient seeks a remedy outside the compensation act.' " *Bright v. Bragg,* 175 Kan. 404, 411, 264 P.2d 494 (1953).

Here, the district court found that Scott was a special employee of Altmar. The term "special employee" refers to a lent employee. *Bendure v. Great Lakes Pipe Line Co.,* 199 Kan. 696, 701, 433 P.2d 558 (1967). A special employee becomes the servant of the special employer and assumes the same position as a regular employee under the Workers Compensation Act. 199 Kan. at 701. Where the injured employee is determined to be both a special employee and a general employee, he or she may look to either or both of his or her employers for compensation. *Bright,* 175 Kan. at 412.

Scott claims Altmar failed to establish the existence of the required express or implied contractual employment relationship between Scott and Altmar. The district court found that Scott and

Altmar entered into an implied employment contract and that no controverted issues of material fact precluded summary judgment.

In its memorandum decision, the district court noted that we have adopted the three-prong test promoted by Professor Larson to determine the existence of a special employer/employee relationship. See *Bendure*, 199 Kan. at 704; 3 Larson's Workers' Compensation Law § 67.01 (2001). The test is:

"When a employer lends an employee to another party, that party becomes liable for worker's compensation only if

(a) the employee has made a contract of hire, express or implied, with the second employer;

(b) the work being done is essentially that of the second employer; and

(c) the second employer has the right to control the details of the work.

When all three of the above conditions are satisfied in relation to both employers, both employers will be liable for workers' compensation and both will have the benefit of the exclusivity defense to tort claims." 3 Larson's Workers' Compensation Law § 67.01[1], p. 67-2.

If the conditions are satisfied, "the presence of a general employer somewhere in the background cannot change the conclusion that the special employer has qualified as an employer of this employee for compensation purposes." 3 Larson's Workers' Compensation Law § 67.01[2], p. 67-3.

Scott argues that (1) there was no contract between Scott and Altmar and (2) Altmar lacked the right to control all aspects of Scott's work, challenging prongs (a) and (c) of the Larson test. Scott focuses his appellate arguments on the issue of whether a contract of employment existed as a matter of law.

Altmar, advancing *Bright v. Bragg*, 175 Kan. 404, and *Hobelman v. Krebs Construction Co.*, 188 Kan. 825, 366 P.2d 270 (1961), contends that Scott made an implied employment contract with Altmar when he voluntarily appeared at the project every day and consented to work under Altmar's direction and control.

The test to determine a person's status as a special employer is whether the employer has the right to control and direct the particular activity as a consequence of which the injury occurred. *Bright*, 175 Kan. at 412; see *Bendure*, 199 Kan. at 704-05 (disapproving *Bright* because relationship between seller and buyer "was

that of vendor and vendee, not that of principal and contractor a term is to be understood in K.S.A. 44-503"). *Bendure* teaches that in determining whether special employer/employee relationship exists, a number of factors have evidentiary value, the most important of which is degree of control retained by person for whom the work is done.

Scott cites *Bright v. Cargill, Inc.*, 251 Kan. 387, 837 P.2d 348 (1992), to support his contention that the determination of whether there was an implied contract between he and Altmar was a question for a jury.

The district court here distinguished *Cargill* from Scott's case, noting that in *Cargill* we addressed the issue of whether the temporary employment agency had relinquished sufficient control of the worker to constitute abandonment and, therefore, eliminate any vicarious liability for the worker's negligence. In Scott's case, the issue was not the relinquishment of control with regard to a temporary agency's vicarious liability. Instead, citing *Bragg*, the district court identified this issue: "Did Altmar have the right to control and direct the particular activity as a consequence of which the injury occurred?" We agree with the conclusion that the uncontroverted facts showed that Altmar did have the right.

Scott also relies on *Bendure*, 199 Kan. 696. Bendure was a steel company employee. He came on the premises of the defendant Great Lakes Pipe Line Company (Great Lakes) to deliver two steel I-beams. The conflicting evidence controversy revolved around the unloading of the truck. Bendure was injured while unloading the beams. He filed a personal injury action against Great Lakes. The district court directed a verdict in favor of Great Lakes after finding that at the time and place of and during the circumstances surrounding the injury, Bendure was a "special and statutory employee" of Great Lakes. 199 Kan. at 700. On appeal, we found that the evidence was conflicting on whether Bendure was a loaned employee and on whether (1) he had made a contract with Great Lakes, (2) the work being done was essentially that of Great Lakes, and (3) Great Lakes had the right to control the details of the work. We concluded the district court erred in sustaining Great Lakes' motion for directed verdict as a matter of law. 199 Kan. at 705.

*Bendure* is distinguishable from the facts here, as there was conflicting evidence concerning whether the I-beam delivery included unloading the product for the customer in *Bendure*. See 199 Kan. at 698-700.

We now turn to examine the third prong of the Larson test, involving Altmar's right of control. Scott points out that Davlin, as a temporary employment agency, assigned him to his place of work. Davlin was responsible for all tax withholdings on Davlin workers, and only Davlin had the right to fire Davlin workers. Scott also argues that unlike the situation in *Cargill*, Altmar did not control the hours that Scott worked. The record shows that although an Altmar supervisor set a time for Davlin employees to arrive at the site, Altmar did not control when the Davlin employees would arrive at or depart from the job site. In his deposition, Robert Johnson, an Altmar superintendent, testified that in several cases Davlin workers did not have their own transportation and had to rely on a Davlin van or other vehicle to transfer them to and from the site. Scott also notes that Altmar did not consider Davlin workers to be Altmar employees.

Altmar contends that it is error to emphasize whether it intended Scott to be a "regular" employee. It notes that if this were a proper inquiry, an employee of a temporary agency could *never* be considered a special employee because companies that use temporary employees do so in order to avoid hiring additional permanent employees. Altmar argues that, instead, we must look at who had control of Scott once he arrived at the job site. We agree.

The undisputed facts show that Altmar controlled Scott's actions at the time he was injured.

Larson appears to have analyzed the fact situation here:

"If, however, the general employer merely arranges for labor without heavy equipment, the majority of the cases hold that the worker becomes the employee of the special employer, although there is substantial *contra* authority. For example, employers obtaining workers from the kind of labor service typified by Manpower, Inc. have usually, but not invariably, been held to assume the status of special employer. Incidentally, most of these cases arose in the context of summary judgment motions against injured workers who were attempting to sue the borrowing employer in tort." 3 Larson's Workers' Compensation Law § 67.05[3], p. 67-13.

The district court, relying on *Corley v. Hardaway Co.*, 905 F. Supp. 923 (D. Kan. 1995), agreed with Altmar's assertion that an implied employment contract existed between Altmar and Scott as a special employer/employee. Other jurisdictions have upheld orders granting summary judgment in cases involving temporary personnel agencies. See *Kelly v. Geriatric and Med. Serv.*, 287 N.J. Super. 567, 577-78, 671 A.2d 631, *aff'd* 147 N.J. 42, 685 A.2d 943 (1996); *Meka v. Falk Corp.*, 102 Wis. 2d 148, 158, 306 N.W.2d 65 (1981), but see *Borneman v. Corwyn Transport, Ltd.*, 212 Wis. 2d 25, 567 N.W.2d 887 (1997) (statutory amendment replaced loaned employee test).

In support of his contention that summary judgment was improper, Scott discusses *Parson v. Proctor & Gamble Mfg. Co.*, 514 N.W.2d 891 (Iowa 1994); *Hill v. Erdle Perforating Co.*, 53 App. Div. 2d 1008, 386 N.Y.S.2d 265 (1976); and *Novenson v. Spokane Culvert*, 91 Wash. 2d 550, 588 P.2d 1174 (1979).

We have examined the cases cited by the parties. It is significant here that Altmar controlled and supervised all aspects of work performed at the job site and that Davlin had no control over what work was to be done at the site by Scott, the temporary worker. There was no evidence to controvert the fact that Scott accepted Altmar's control and direction. By Scott's conduct, he made an implied contract of hire with Altmar. As a special employer, Altmar was immune from Scott's common-law negligence claim under the exclusive remedy provision of K.S.A. 44-501(b).

Affirmed.

DAVIS, J., not participating.

BRAZIL, Chief Judge Retired, assigned.