729 S.E.2d 845

**Byron BOWENS, Plaintiff Below, Petitioner**

v.

**ALLIED WAREHOUSING SERVICES, INC., d/b/a Allied Logistics, a West Virginia Corporation, Defendant Below, Respondent.**

No. 11–0210.

Supreme Court of Appeals of West Virginia.

Submitted April 17, 2012.

Filed June 15, 2012.

526

Richard W. Weston, Esq., Weston Law Office, Huntington, WV, for Petitioner.

Thomas Scarr, Esq., Jenkins Fenstermaker, Huntington, WV, for Respondent.

BENJAMIN, Justice:

This appeal was brought by Byron Bowens, Appellant, following two separate orders of the Circuit Court of Wayne County granting summary judgment to Allied Warehousing Services, Inc., d/b/a Allied Logistics [hereinafter "Allied"], the Appellee, dismissing Bowens's workers' compensation fraud and common law fraud claims and granting summary judgment to Allied finding it to be a special employer of Bowens for the purpose of workers' compensation immunity. In this appeal, Bowens contends that the circuit court erred in its order dismissing his work-

ers' compensation fraud and common law fraud claims because the decision of the administrative law judge was not based solely upon the medical issues presented. Rather, he contends, the decision was influenced by the submission of allegedly fraudulent training documents by Manpower, his employer, which were allegedly originally supplied by Allied. Bowens also alleges that the circuit court erred in determining that Allied was a special employer for purposes of workers' compensation immunity, thus requiring him to sue Allied under a deliberate intent theory rather than a negligence theory of liability. After a careful review of the briefs, the record submitted on appeal, and hearing the oral arguments of the parties, we affirm the decisions of the circuit court.

## I.

### FACTS AND PROCEDURAL HISTORY

Bowens began working for Manpower, a temporary employment agency, in the summer of 2006. The second work assignment he received was to operate a forklift for Allied Warehousing. Allied is in the business of providing a wide range of warehousing services from various warehouse facilities located in West Virginia and Virginia. Although Allied directly employs certain supervisors and workers at its various facilities, due to the variability of its needs and for other business reasons, it has historically staffed its warehouse in Kenova, West Virginia, by obtaining temporary workers from a temporary employment agency like Manpower.

Under the arrangement between Allied and Manpower, Manpower was responsible for payment of employee wages, payroll deductions and payment of unemployment and workers' compensation premiums. Each week, Manpower would submit an invoice to Allied for time and work of all Manpower employees who were assigned to work and who worked for Allied. The amount paid to Manpower by Allied included a premium over Bowens's actual wages to cover the costs of employing Bowens, including payroll deductions, federal and state unemployment compensation, and required payment of workers' compensation premiums.

Although Manpower was to provide Allied with experienced forklift operators [1], Allied implemented additional testing and training before permitting Manpower temporary employees to operate machinery. In addition to giving each temporary employee a forklift instruction manual explaining the proper way to drive and park a forklift, Allied conducted a two part test to evaluate each temporary employee's knowledge and proficiency. Each employee was allegedly given an oral multiple choice and true/false test based on a Clark Equipment Operator Training form. Allied also observed each new forklift operator for several days, after which a supervisor would complete an evaluation form entitled "Allied Warehouse Forklift Operator Field Test."

On October 1, 2006, J.R. Jeffrey, an Allied warehouse supervisor, performed a two part field test using the "Field Test" form, a two-page pre-printed form with spaces provided at the top for the date, the name of the individual being evaluated, and the name of the individual performing the evaluation. Jeffrey signed the form in the top right corner and printed Bowens's name in the top left corner. Bowens has made no allegation of forgery or fraud regarding this form. Jeffrey also used a pre-printed form entitled "Clark Equipment Company Operator Training" to evaluate Bowens. This form consists of various multiple choice and true/false questions regarding equipment operating procedures. The form contains a space in the top right corner for the date and a space in the top left corner for the "student's signature." Like the "Field Test," the Clark Equipment Company form is used by Allied in the regular course of its business to ensure that workers who use equipment in its facility are properly trained and qualified. In this case, Jeffrey allegedly orally administered the test contained on the Clark Equip-

---

1. On a "pre-interview" form designed to assist Manpower with selecting workers for Allied's Kenova facility, Allied indicated that workers would likely perform work with forklifts and therefore it needed workers with forklift operation experience. Allied alleges that as a result, Manpower agreed to send Allied only experienced forklift operators.

ment Company form to Bowens on October 1, 2006, the same day he completed the "Field Test." As he did with the "Field Test," Jeffrey also allegedly personally signed the Clark Equipment Company form in the top right corner and then printed Bowens's name in the top left corner.

On April 23, 2007, Bowens was pinned between his forklift and another forklift operated by Bowens's supervisor and fellow Manpower employee, John Church. He suffered a crushed pelvis as a result of this accident. That same day, Bowens submitted an Employees' and Physicians' Report of Injury to Brickstreet. On this form, Bowens listed Manpower as his employer and John Church as his supervisor. On April 26, 2007, Manpower filed an Employers' Report of Injury with Brickstreet.

Bowens received temporary total disability benefits for approximately five months and was then awarded permanent partial disability benefits. Allied had no involvement in the workers' compensation proceedings, as Allied did not directly pay any workers' compensation premiums for Bowens. Rather, such premiums were paid directly by Manpower. After his injury, Bowens alleged that he was not properly certified to operate a forklift and that he did not take a written test from Manpower or Allied on October 1, 2006. On October 23, 2008, Bowens filed a complaint against Allied Warehousing, Allied Realty Company, and Commercial Help LTD d/b/a Manpower. The Complaint asserted various claims against Allied including negligence, unsafe workplace, negligent hiring, workers' compensation fraud, and common law fraud. Bowens sought both compensatory and punitive damages from Allied. Manpower and Allied Realty Company were later dismissed from the case.[2]

On January 23, 2009, Allied filed a motion to dismiss the workers' compensation fraud claim. The circuit court below denied Allied's motion to dismiss finding that because they presented issues outside of the pleadings, the motions had to be considered as motions for summary judgment and further discovery was needed. The court also held that it should review the administrative law judge's decision regarding Bowens's temporary total disability benefits, which decision formed the basis for Bowens's fraud claims. Thereafter, Allied then filed its motion seeking summary judgment on Bowens's workers' compensation fraud and common law fraud claims. The circuit court granted Allied's motion on April 15, 2009. In its order, the circuit court concluded that the administrative law judge's order suspending Bowens's temporary total disability benefits was based upon a medical determination, and thus, Bowens's benefits would not have been affected by the receipt of allegedly fraudulent documents.

Subsequently, on May 11, 2009, Allied filed a motion for summary judgment on Bowens's negligence claim based on workers' compensation immunity. The circuit court determined, however, that the motion was premature and that certain additional discovery was needed. After the parties had opportunity to conduct additional discovery, Allied filed its Renewed Motion for Summary Judgment on March 30, 2010 as to the negligence claims based on workers' compensation immunity. Allied's motion as to the negligence claim was granted by the circuit court. In its order dated June 8, 2010, the circuit court concluded that Allied was a "special employer" for workers' compensation purposes, thereby entitling it to employer immunity. However, the circuit court gave Bowens the right to amend the complaint to allege a deliberate intent claim against Allied.

Bowens filed an Amended Complaint on July 7, 2010, asserting a deliberate intent claim against Allied. Months later, after additional discovery related to deliberate intent issues, Allied filed a motion for summary judgment on the deliberate intent claim alleging that Bowens failed to fully respond to discovery, failed to produce and identify any expert witness to support his claim, and failed to provide or identify any evidence concerning a genuine issue of material fact as to the elements of a deliberate intent claim. Allied argued that the undisputed evidence indicated that the only specific unsafe working condition that existed arose from Bow-

---

2. Manpower settled and Allied Realty was dismissed by stipulation.

ens's own failure to follow established company policies and safety instructions of which he was well aware and there was no evidence that Allied had actual knowledge of any specific unsafe working condition. Bowens did not file a response to the motion for summary judgment. The court granted Allied's motion on January 4, 2011. This appeal followed.

## II.

## STANDARD OF REVIEW

■ "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

## III.

## DISCUSSION

### A. *Workers' Compensation and Common Law Fraud Claims*

In his first assignment of error, Bowens alleges that the dismissal of his fraud claims was improper because the workers' compensation decision related to his temporary total disability benefits was not based solely on medical issues. Rather, Bowens alleges that his temporary total disability benefits were terminated due to the submission of a fraudulent training document, as the administrative law judge listed two reasons for denying Bowens's additional temporary total disability benefits: 1) he was released to work and chose not to do so; and 2) "further, the claimant was found to have reached maximum medical improvement ["MMI"] regarding the April 23, 2007, injury." Bowens asserts that the first reason for the denial of benefits, that he was released to work and chose not to do so, is the central focus of his fraud claim. He contends that the administrative law judge had to deem his testimony as not credible in order to reach this conclusion.

Below, Bowens testified that he was not certified to operate a forklift and that he did not take any written test from Manpower or Allied on October 1, 2006, although Allied alleges that such was performed. Bowens argues that Allied was responsible for faxing his training documents to Manpower on April 22, 2008, and he contends that Allied cannot explain the reason why these documents were then submitted by Manpower in the workers' compensation proceeding on May 9, 2008, after all of the medical information had already been submitted by both parties. Bowens asserts that because the training documents were submitted by Manpower at this later date, Manpower and Allied sought to attack his credibility regarding whether he could return to work.

Bowens contends that Dr. Young first released him to work on October 5, 2007, with specific restrictions. Bowens testified that he was told by Manpower it did not have available work that he could perform with those restrictions. He further testified that he attempted to find work, but was told that he could not work if his injuries prevented him from walking and getting around. Bowens alleges that because of this testimony, Manpower and Allied chose to attack his credibility by submitting fraudulent documents to prove that he was lying about receiving training.

In response, Allied asserts that it was not responsible for the submission of any training document to the Office of Judges. Rather, the alleged fraudulent documents were submitted by Manpower, the company responsible for directly paying Bowen's workers' compensation claims. Moreover, Allied asserts, and there is no allegation in Bowens's complaint that Allied played any role in Manpower's decision to submit the documents to the Office of Judges. Allied contends that the order of the Office of Judges relied solely upon the medical evidence in determining whether Bowens's temporary total disability benefits should be suspended, and that the alleged fraudulent training documents played no role in the claims determination.

■ It has long been held that to establish fraud it must be clearly and specifically alleged: "He who alleges fraud must clearly and distinctly prove it, either by circumstantial or direct evidence. It will not be presumed from doubtful evidence, or circumstances of suspicion. The presumption is

always in favor of innocence and honesty." Syl. Pt. 1, *Hunt v. Hunt,* 91 W.Va. 685, 114 S.E. 283 (1922). This requirement is reinforced by Rule 9(b) of the West Virginia Rules of Civil Procedure: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Regarding the requirements for pleading fraud, this Court has held that:

> In order for a plaintiff employee to prevail on the narrowly construed cause of action by the employee against an employer for fraudulent misrepresentation concerning the employee's workers' compensation claim, the employee must (1) plead his or her claim with particularity, specifically identifying the facts and circumstances that constitute the fraudulent misrepresentation, and (2) prove by clear and convincing evidence all essential elements of the claim, including the injury resulting from the fraudulent conduct. A plaintiff employee is not entitled to recover unless the evidence at trial is persuasive enough for both the judge and jury to find substantial, outrageous and reprehensible conduct which falls outside of the permissible boundary of protected behavior under the statute. If the pleadings or evidence adduced is insufficient to establish either of the two factors stated above, the trial court may dismiss the action pursuant to Rule 12(b), Rule 56 or Rule 50 of the West Virginia Rules of Civil Procedure.

Syl. Pt. 3, *Cobb v. E.I. duPont deNemours & Co.,* 209 W.Va. 463, 549 S.E.2d 657 (1999)(*citing* Syl. Pt. 4, *Persinger v. Peabody Coal Co.,* 196 W.Va. 707, 474 S.E.2d 887 (1996)).

■ This Court also requires application of the basic test for fraud. *Cobb,* 209 W.Va. at 467, 549 S.E.2d at 661. "The essential elements in an action for fraud are: '(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it.' *Horton v. Tyree,* 104 W.Va. 238, 242, 139 S.E. 737 (1927)." Syllabus Point 1, *Lengyel v. Lint,* 167 W.Va. 272, 280 S.E.2d 66 (1981).

■ In its findings of fact, the circuit court found that the suspension of Bowens's workers' compensation temporary total disability benefits was based upon medical evidence as provided by a physician pursuant to W. Va.Code § 23–4–1(c) (2003), and was not based upon the alleged fraudulent documents. The circuit court granted summary judgment against Bowens stating that "temporary total disability benefits are awarded and suspended based upon a physical and medical determination. As such the termination of the Plaintiff's benefits would not have been effected by the receipt of the allegedly fraudulent training documents." Having examined the record submitted on appeal in this case, we agree with the circuit court's conclusion that the evidence fails to demonstrate that the administrative law judge relied on some false representation of Allied to Bowens's detriment.

Initially, there is no allegation that Allied directly submitted, or even induced the submission of, any training document to the Office of Judges. Bowens acknowledges in his complaint that Manpower, not Allied, submitted the training documents to the Office of Judges. There is no allegation that Allied played any role in Manpower's decision to submit the documents to the Office of Judges.

Second, the Clark Equipment Company Operator Training document, which was completed by Allied approximately seven months before Bowens's accident, was not material to the workers' compensation issue to be decided by the Office of Judges. As Allied correctly maintains, workers' compensation benefits are granted on a no-fault basis when an injury occurs in the course of and resulting from the employment. Under West Virginia Code § 23–4–7a(e) (2005), a private carrier "shall enter a notice suspending the payment of temporary total disability benefits" when: "(1) The physician or physicians selected by the commission conclude that the claimant has reached his or her maximum degree of medical improvement." *Id.* This subsection further states that:

> in all cases, a finding . . . that the claimant has reached his or her maximum degree of

improvement terminates the claimant's entitlement to temporary total disability benefits regardless of whether the claimant has been released to return to work. **Under no circumstances shall a claimant be entitled to receive temporary total disability benefits either beyond the date the claimant is released to return to work or beyond the date he or she actually returns work.**

*Id.* (emphasis added).

The administrative law judge's decision contains a thorough discussion of the factors and evidence that supported its decision. As noted by the administrative law judge, a suspension of temporary total disability benefits is required when a claimant has reached his maximum degree of medical improvement, or when a claimant has been released to return to work. These factors call only for the consideration of objective medical evidence, not Bowens's credibility, on any issue. The decision contains no explicit or implicit discussion of Bowens's credibility. Instead, the administrative law judge noted that Bowens failed to submit sufficient medical evidence demonstrating a continued disability. As noted by the administrative law judge's findings of fact, Bowens was released to return to work at sedentary modified duties by Allen Young, M.D., on October 5, 2007, and determined to have reached maximum medical improvement by Dr. Young on September 14, 2007 and also by Paul Bachwitt, M.D. These objective medical considerations justified the administrative law judge's decision to affirm Bowens's suspension of temporary total disability benefits.

Furthermore, one of the findings of fact in the Office of Judges decision states: "The employer submitted the Fork Lift Operator Field Test dated October 1, 2006." In the "Record Considered", there is a reference to the Allied Warehouse Forklift Operator Field Test found under "Employer Evidence." This document was categorized as "Not Medical." More importantly, the Clark Equipment Company Operator Training document, which Bowens alleges is fraudulent, is not mentioned or referred to in the administrative law judge's decision at all. Moreover, in the "Discussion" section of the decision, there is no reference to either of the training documents, nor is there any evidence of reliance upon the training documents whatsoever. Some of the language in the last paragraph of the "Discussion" and the "Conclusions of Law" in the decision states:

> After again reviewing the claim, there was insufficient information to pay additional temporary total as the evidence has not established the claimant was totally disabled. The evidence revealed the claimant was released to return to work but chose to pursue Social Security disability. The claimant was found to have reached maximum medical improvement regarding the April 23, 2007, injury. Therefore, the Claims Administrator's Order dated December 3, 2007 and December 5, 2007 should each be affirmed.

Conclusions of Law:

> The preponderance of the evidence has established the Claims Administrator's Orders dated December 3, 2007, and December 5, 2007 should each be affirmed as the claimant was released to return to work and chose not to do so. Further, the claimant was found to have reached maximum medical improvement regarding the April 23, 2007 injury. Therefore the Claims Administrator's Order should be affirmed.

. . .

Although Bowens argues that the administrative law judge's temporary total disability benefit decision "was not based solely upon medical issues," there is simply no evidence that the administrative law judge affirmed the closure of Bowens's temporary total disability claim based upon anything other than medical evidence which revealed that Bowens was not totally disabled, that Bowens had been released to return to work by his doctors, and that the doctors had found that Bowens had reached his maximum degree of medical improvement Pursuant to W. Va. Code § 23–4–7a(e), payment of temporary total disability benefits is a purely medical issue. Thus, even assuming that Allied sent Manpower a false training document, we cannot conclude that Bowens's chances of receiving Workers' Compensation benefits were damaged by submission of the training docu-

ments. Accordingly, we find no error in the circuit court's order dismissing Bowens's workers' compensation fraud and common law fraud claims. Bowens was specifically required to plead with particularity an injury suffered as a result of justifiable reliance on "material and false" fraudulent conduct. The facts alleged in the Complaint do not satisfy this requirement.

## B. Workers' Compensation Immunity

We now turn to the second assignment of error, whether Allied is entitled to employer immunity from Bowens's negligence claims. Bowens asserts that Allied was properly sued under a negligence theory, rather than a deliberate intent theory, because he was Manpower's employee, not Allied's. Specifically, Bowens contends that Allied is foreclosed from claiming workers' compensation immunity because it asserted that he was not Allied's employee, but rather Manpower's employee, during the litigation of his workers' compensation fraud claims. Bowens also argues that Allied is not an "employer" as defined by West Virginia's workers' compensation statutes, but rather is a mere third-party. Additionally, he maintains that Allied should not be classified as a common law "special employer" because there is no existing authority from this Court supporting the adoption of such a rule. He alternatively asserts that even if this court adopts the special employer doctrine, Allied still does not meet the criteria to satisfy special employment status.

In response, Allied asserts that the circuit court's order granting summary judgment and dismissing Bowens's negligence claims based on workers' compensation immunity is clearly supported by applicable law and the evidence. Specifically, Allied argues that the circuit court relied upon longstanding universally accepted legal principles in concluding that Bowens was a lent or borrowed employee, and pursuant to the "loaned servant doctrine" Allied was Bowens's "special employer" and was therefore entitled to workers' compensation immunity. Allied contends that the circuit court's analysis was in accord with the Fourth Circuit Court of Appeals decision, *Maynard v. Kenova Chemical Co.*, 626 F.2d 359 (4th Cir.1980), various authoritative treaties including Larson's on Workers' Compensation Law, and virtually unanimous decisions on the same issue from state and federal jurisdictions throughout the country. Allied maintains that courts have held, as a matter of experience and present business practices, that an employee may be employed by more than one employer. Allied argues that when a dual employment situation exists, the employee has both a "general employer" and a "special employer," and both are subject to the laws and regulations that provide safety and other employment protections to employees, therefore entitling both to workers' compensation exclusivity and immunity provided by West Virginia workers' compensation laws. For these reasons, Allied contends that it and Manpower did not assert conflicting defenses in litigating Bowens's claims. Allied asserts that Bowens's remedy for a work-related injury was limited to a claim for workers' compensation benefits and/or an action for deliberate intent.

West Virginia Code § 23–2–6 (2003) reads, in pertinent part:

> Any employer subject to this chapter who subscribes and pays into the workers' compensation fund the premiums provided by this chapter . . . is not liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring, after so subscribing.

*Id.* By virtue of West Virginia Code § 23–2A–1(a) (2009), immunity is not extended to third-party non-employers: "(a) Where a compensable injury . . . is caused, . . . by the act or omission of a third party, the injured worker, . . . shall not . . . be precluded from making claim against the third party." West Virginia Code § 23–2–1(a) (2005) broadly defines the term "employer" by providing that "all persons, firms, associations and corporations regularly employing another person . . . for the purpose of carrying on any form of industry, service or business . . . are employers within the meaning of this chapter." West Virginia Code § 23–2–1a (1999) also broadly defines the term "employee" by providing that "[e]mployees subject to this chapter are all persons in the service of an employer and employed by them for the pur-

pose of carrying out the industry, business, service or work in which they are engaged . . ."

■ In defining who may be considered an employee for tort liability purposes by virtue of common law, a different context than the case *sub judice,* this Court previously adopted the borrowed servant doctrine[3] in 1948 in *American Telephone & Telegraph Co. v. Ohio Valley Sand Co.,* 131 W.Va. 736, 50 S.E.2d 884 (1948). Therein, this Court found that a temporary employee engaged in negligent conduct while working for an employer would subject the employer to liability for that temporary employee's negligence if the control element was satisfied. *Id.* at 742, 50 S.E.2d at 887. In Syllabus Point 1, this Court specifically held that "[u]nder the so called 'borrowed servant' rule a general employer remains liable for the negligent act of his servant unless it affirmatively appears that he has completely relinquished control of the servant's conduct from which the alleged negligence arose to the person for whom the servant is engaged in performing a special service." *Id.* at Syl. Pt. 1.

In a later decision in 1976, this Court reaffirmed the acceptance of the "borrowed servant" rule in the tort liability context in *Burdette v. Maust Coal and Coke Corp.,* 159 W.Va. 335, 344, 222 S.E.2d 293, 299 (1976). In determining that the circuit court's jury instruction on the borrowed servant doctrine was a misstatement of the law and therefore erroneous, this Court held that the burden is on employers to prove that the right of control has been completely relinquished to the alleged special employer. *Id.* The mere sharing or borrowing of survey crews or the partial relinquishment of control by the general employer does not relieve the employer of liability. *Id.*

■ In determining what standards should be used in assessing the employment status of a worker in an independent contractor relationship, this Court has held that while it is necessary to consider the entire circumstances of the relationship, the right to exercise control and supervision is the determinative element. *See Myers v. Workmen's Compensation Commissioner,* 150 W.Va. 563, 566–67, 148 S.E.2d 664, 666–67 (1966); *Spencer v. Travelers Insurance Co.,* 148 W.Va. 111, 116–17, 133 S.E.2d 735, 739 (1963); *Davis v. Fire Creek Fuel Company, et al.,* 144 W.Va. 537, 544, 109 S.E.2d 144, 149–50 (1959). "In determining whether a workman is an employee or an independent contractor, the controlling factor is whether the hiring party retains the right to control and supervise the work to be done." Syl. Pt. 2, *Myers v. Workmen's Compensation Com'r,* 150 W.Va. 563, 148 S.E.2d 664. "If the right to control or supervise the work in question is retained by the person for whom the work is being done, the person doing the work is an employee and not an independent contractor, and the determining factor in connection with this matter is not the use of such right of control or supervision but the existence thereof in the person for whom the work is being done." Syl. Pt. 2, *Spencer v. Travelers Insurance Company,* 148 W.Va. 111, 133 S.E.2d 735.

The specific issue of whether a temporary employer can obtain workers' compensation immunity protection from common law suits based upon the commonly accepted "special employer" rule is an issue of first impression in West Virginia. Although this Court has not previously discussed the special employer doctrine specifically, the Fourth Circuit has adopted the rule. In *Maynard v. Kenova Chemical Co.,* 626 F.2d 359 (4th Cir. 1980), the Fourth Circuit, in interpreting West Virginia law, awarded immunity to Kenova, a special employer, following the plaintiff's receipt of a workers' compensation award against Manpower, his temporary employment service employer. Before the district court, Kenova had moved for summary judgment on the grounds that it was the employer of Maynard when a scaffolding accident occurred. *Id.* at 360. The district court had found as a matter of law that Maynard was the employee of Kenova within the meaning of the workmen's compensation laws of West Virginia and that, accordingly, he was precluded from maintaining his negligence action by W. Va.Code § 23–2–6. *Id.* In affirming the ruling of the district court,

---

**3.** The terms "borrowed servant" and "loaned servant" are interchangeable.

the *Maynard* court relied upon the widely accepted test set forth in Larson, Workmen's Compensation Law in determining whether a special employer is entitled to immunity for workers' compensation purposes. *Id.* at 362. It stated:

> 1A Larson, Workmen's Compensation Law 48.00 provides:
>
> When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if:
>
>> (a) the employee has made a contract of hire, express or implied with the special employer; and
>>
>> (b) the work being done is essentially that of the special employer; and
>>
>> (c) the special employer has the right to control details of the work.
>
> When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation.

*Maynard*, 626 F.2d at 362.[4] Applying the Larson's elements to the facts of the case in *Maynard*, the Fourth Circuit found that all three of these conditions were satisfied. *Id.* Regarding the first element, the *Maynard* Court found that the plaintiff had an implied contract of hire with Kenova because when he accepted employment with Manpower, he necessarily agreed to perform work for Manpower's customers, and he had the right to refuse certain assignments. *Id.* As to the second and third elements, the *Maynard* Court found that the plaintiff was performing a task that was part of Kenova's regular course of operations, and that while he was performing that task, he was under the com-

plete control and direction of Kenova's supervisory personnel. *Id.*

In reviewing the prior authority of this Court on what standards are to be used in determining the employment status of a worker, the Fourth Circuit noted that while it is necessary to consider the entire circumstances of the relationship, the right to exercise control and supervision is still the determinative element. *Id.* (*citing Myers v. Workmen's Compensation Commissioner*, supra; *Spencer v. Travelers Insurance Co.*, supra; and *Davis v. Fire Creek Fuel Company, et al.*, supra.). The *Maynard* court offered additional insight into the rationale for its decision in the following footnote:

> We note that the court in *St. Claire v. Minnesota Harbor Service, Inc.*, on facts very similar to this case, considered the "most damning fact" against the petitioner-employee to be that part of the difference between what the defendant-employer paid Manpower and what Manpower paid the plaintiff went towards paying the plaintiff's workmen's compensation premium. "In other words, the plaintiff [was] suing in tort the man who paid for his Workman's Compensation." 211 F.Supp. at 528. In the *St. Claire* court's opinion, such a case "strikes at the heart of the Workman's Compensation law" and "is in unequivocal opposition to the well-known principles on which Workman's Compensation is founded." *Id.* The same argument may be made in this case.

*Id.*, n. 3 (emphasis in original).

The *Maynard* decision is consistent with the law in the majority of jurisdictions. Most courts that have addressed the issue have given workers' compensation immunity to special employers.[5] In review of the *May-*

---

4. The most current version of this test is set forth in 3 Lex K. Larson, Larson's Workers' Compensation § 67.01 (Matthew Bender, Rev. Ed.2011). It provides,

> When a employer lends an employee to another party, that party becomes liable for workers compensation only if
>> (a) the employee has made a contract of hire, express or implied, with the second employer;
>> (b) the work being done is essentially that of the second employer; and
>> (c) the second employer has the right to control the details of the work.

> When all three of the above conditions are satisfied in relation to both employers, both employers will be liable for workers' compensation and both will have the benefit of the exclusivity defense of tort claims.

5. *See, e.g., Ex parte Salvation Army*, 72 So.3d 1224 (Ala.Civ.App.2011) (recognizing special employer immunity under workers' compensation statute); *Anderson v. Tuboscope Vetco., Inc.*, 9 P.3d 1013 (Alaska 2000) (same); *Araiza v. U.S. West Business Resources, Inc.*, 183 Ariz. 448, 904 P.2d 1272 (App.1995) (same); *Lopez v. Hydratech, Inc.*, 2007 WL 1810149 (Cal.App.2007)

*nard* opinion and the opinions of numerous other courts also adopting the Larson's test for the special employer rule, we join the sound majority of jurisdictions and find that a second employer meeting the requisite criteria set forth in 3 Larson's Workers' Compensation § 67.01 (2011 ed.) may be deemed a special employer for workers' compensation immunity purposes. The commonly used test set forth in Larson's, as set forth in *Maynard,* provides the basic elements which should be satisfied in determining whether a special employer is liable for workers' compensation and therefore has immunity from tort liability. We hold that in determining whether a second employer is a special employer for workers' compensation purposes, the following factors are dispositive: (1) whether the employee has made a contract of hire, express or implied with the second employer; (2) whether the work being done is essentially that of the second employer; and (3) whether the second employer has the right to control details of the work. When all three of the above conditions are satisfied in relation to both employers, both employers will be liable for workers' compensation and both will have the benefit of the exclusivity defense of tort claims. 3 Lex K. Larson, Larson's Workers' Compensation 67.01 (Matthew Bender, Rev. Ed.2011).

■ The workers' compensation liability placed upon the special employer may be discharged by requiring and verifying that the statutory general employer obtained workers' compensation coverage. Even though a general employer and special employer may agree between themselves that the general employer is responsible for payment of benefits, the special employer would be liable if the general employer defaulted in that obligation. *Cf. Bilotta v. Labor Pool of St. Paul, Inc.,* 321 N.W.2d 888 (Minn.1982).

■ Having set forth the test for determining whether a special employer relationship exists, we must now analyze these factors as they apply to the facts of the instant case to determine if Allied is Bowens's special employer. Whether an individual is a special employee for workers' compensation purposes is generally a question of fact. However, a court may find special employment status as a matter of law where the pleadings, depositions, answers to interrogatories, together with affidavits establish that there is no genuine issue of material fact to the contrary. *See Union Light & Power Co. v. District of Columbia Dep't of Employment Servs.,* 796 A.2d 665, 669 (D.C.2002) (holding that temporary employee status for workers' compensation purposes is determinable "as a matter of law where the particular, undisputed critical facts compel that conclusion and present no triable issue of fact.") (quoting *Thompson v. Grumman Aerospace Corp.,* 78 N.Y.2d 553, 578 N.Y.S.2d 106, 585 N.E.2d 355, 357 (1991)); *see also Fletcher v. Apache Hose & Belting Co., supra; Hamilton v. Shell Oil Co.,* 233 So.2d 179 (Fla.App. 4 Dist.1970)).

(same); *Daniels v. Riley's Health & Fitness Centers,* 310 Ark. 756, 840 S.W.2d 177 (1992) (same); *Evans v. Webster,* 832 P.2d 951 (Colo. App.1991) (same); *Crespo v. BAGL, LLC,* No. FBTCV095021661S, 2009 WL 5322400 (Conn.Super. Dec. 15, 2009) (same); *USA Waste of Md., Inc. v. Love,* 954 A.2d 1027 (D.C.2008) (same); *American Engineering & Development Corp. v. Sanchez,* 932 So.2d 1241 (Fla.App. 3 Dist.2006) (same); *Frank v. Hawaii Planing Mill Foundation,* 88 Hawai'i 140, 963 P.2d 349 (1998) (same); *Fletcher v. Apache Hose & Belting Co., Inc.,* 519 N.W.2d 839 (Iowa App.1994) (same); *Fox v. Contract Beverage Packers, Inc.,* 398 N.E.2d 709 (Ind.Ct.App.1980) (same); *Scott v. Altmar, Inc.,* 272 Kan. 1280, 38 P.3d 673 (2002) (same); *Hoffman v. Nat'l Mach. Co.,* 113 Mich. App. 66, 317 N.W.2d 289 (1982) (same); *Danek v. Meldrum Mfg. & Eng'g Co.,* 312 Minn. 404, 252 N.W.2d 255 (1977) (same); *Colbert v. Mississippi Marine Corp.,* 755 So.2d 1116 (Miss.App.1999) (same); *Daniels v. Pamida, Inc.,* 251 Neb. 921, 561 N.W.2d 568 (1997) (same); *Durham v. South State, Inc.,* 2010 WL 1657054 (N.J.Super.A.D.2010) (same); *Hamberg v. Sandia Corp.,* 143 N.M. 601, 179 P.3d 1209 (2008) (same); *Smith v. Pizza Hut of America, Inc.,* 289 A.D.2d 48, 734 N.Y.S.2d 127 (2001) (same); *Spore v. Camac Veneer, Inc.,* 62 Or.App. 495, 661 P.2d 582 (1983) (same); *English v. Lehigh County Auth.,* 286 Pa.Super. 312, 428 A.2d 1343 (1981) (same); *Urena v. Theta Products, Inc.,* 899 A.2d 449 (R.I.2006) (same); *Goodman v. Sioux Steel Co.,* 475 N.W.2d 563 (S.D.1991) (same); *Wingfoot Enterprises v. Alvarado,* 111 S.W.3d 134 (Tex.2003) (same); *Pace v. Cummins Engine Co., Inc.,* 905 P.2d 308 (Utah App.1995) (same); *Simmons v. Atlas Vac Machine Co.,* 493 F.Supp. 1082 (E.D.Wis.1980) (same).

**536**

■ The circuit court correctly found that all three of these conditions were satisfied in the present case. Regarding the first element of whether the employee has made a contract of hire, express or implied with the special employer, there is no dispute that Bowens was hired by Manpower, a temporary employment service, with the knowledge and understanding that he would be assigned work at, for and under the direction of certain Manpower customers. The circuit court correctly found that an implied contract of hire existed between Bowens and Allied in that, among other things, Bowens had the right to refuse to accept an assignment at or for Allied, but he chose not to exercise that right and willingly accepted the assignment to work for Allied through Manpower. Numerous other courts have likewise found that an employee's consent to special employment may be implied where the employee acquiesces to control by the special employer.[6]

As to the second element of whether the work being done is essentially that of the special employer, at the time Bowens's accident occurred, he was an employee leased from Manpower that was assigned to Allied and who worked for Allied at its Kenova, West Virginia facility. No dispute exists regarding these facts and Bowens admits that his work was essentially that of Allied.

Regarding the third element of whether the special employer has the right to control details of the work, despite Bowens's argument to the contrary, there is no factual dispute that Allied had the right to control, and in fact did control, the details of Bowens's day to day work while at Allied. The record reveals that Bowens's day to day

tasks and work were performed at Allied's facility and that his work was performed at the direction and under the supervision of Allied employees. Bowens's supervisor, J.R. Jeffrey, was an Allied employee. Jeffrey offered the following deposition testimony:

Q: Did Manpower, any of Manpower's representatives have, play any role in directing the day-to-day work of any of the Manpower temporary workers working at the Allied Warehousing Kenova Warehouse?

A: No.

Q: Who was responsible to set their work schedule?

A: What was the question?

Q: Who was responsible to set the, the work schedule of these Manpower temporary employees working at the Allied Warehousing Kenova Warehouse?

A: I would do that.

Q: Who would be responsible and who was responsible to assign them their daily tasks?

A: I would do that.

Q: Who would decide if they were to work, when and if to work any overtime?

A: I would do that.

Q: Who would have reviewed and validated the Allied—I'm sorry, the Manpower employees' time sheets who were working as temporary employees at the Allied Warehousing Kenova Warehouse?

**6.** See Stuyvesant Corp. v. Waterhouse, 74 So.2d 554 (Fla.1954) (holding that a contract was implied where the special employer allowed the claimant to come onto its premises, use its equipment, and participate in its show under its direction.); A.J. Johnson Paving Co. v. Industrial Comm'n, 82 Ill.2d 341, 45 Ill.Dec. 126, 412 N.E.2d 477 (1980) (a contract of employment between the borrowed servant and the paving company was found by the acquiescence in and acceptance of the paving company's control and instructions.); Beach v. Owens–Corning Fiberglas Corp., 542 F.Supp. 1328 (N.D.Ind.1982), aff'd, 728 F.2d 407 (7th Cir.1984) (holding that although plaintiff never considered himself an employee of Owens–Corning, his acquiescence in

direct supervision by Owens–Corning demonstrated an implied contract of service.); Bright v. Bragg, 175 Kan. 404, 264 P.2d 494 (1953) (assent to directions as to where and how to pile sheet metal indicated that vendee became the special employer of the driver for the vendor.); Smieja v. City of Browerville, 406 N.W.2d 325 (Minn.Ct. App.1987) (holding that Smieja's consent to a contract of hire could be implied from his acceptance of the district's control and direction of his work.); Thompson v. Grumman Aerospace Corp., 78 N.Y.2d 553, 578 N.Y.S.2d 106, 585 N.E.2d 355 (1991) (holding that a lent employee's acceptance of his special employment status could be implied from his acquiescence to the control and direction of the special employer.).

A: The great majority of the time, the assistant manager [at Allied] Jimmy Shelton would do that. On occasion I would, but Jimmy did more so than I did.

Q: And when they were performing their work as temporary employees working at the Allied Warehousing Kenova Warehouse, whose equipment and tools did they use?

A: They used Allied Warehousing's equipment and tools.

Q: And would I be correct that Allied was the entity that had the right to control the details of their work?

A: That's correct.

No Manpower employees were present at Allied's facility for the purpose of monitoring or controlling Bowens's performance. Allied tested and evaluated Bowens's prior knowledge and proficiency regarding forklift operations and certified him to be a qualified forklift operator. Additionally, there is no dispute that Bowens was injured during the course of his work while using certain Allied equipment. Allied's authority to exercise complete supervision and control over Bowens while he was on Allied's premises establishes Allied as Bowens's special employer within the meaning of West Virginia's workers' compensation statutes. Although Allied discussed certain administrative employment matters with Manpower such as job assignments and pay procedures, and Manpower visited the Allied premises periodically to determine whether Allied was satisfied with the work, the record establishes that Allied had complete direction and control of the details of the day to day work performed by Bowens.

Similar to the circumstances in *Maynard, supra,* this case involves a situation where the plaintiff's main employer, a temporary employment service, billed Allied, the special employer, "to compensate for expenses and profits, including Manpower's cost of subscribing to the Workmen's Compensation Fund." 626 F.2d at 360. Because Manpower billed Allied to compensate for expenses and profits of this nature, Allied, by proxy, paid for Bowens's workers' compensation coverage. Therefore, Allied should properly share in the immunity afforded under the workers' compensation statute. There is no dispute that Allied was a subscriber in good standing with the West Virginia Workers' Compensation Fund.

Furthermore, because we conclude that Allied was Bowens's special employer at the time of his accident, we find that Allied has not taken inconsistent positions regarding its status as a special employer during the course of the underlying litigation. In its Answer to Bowens's Complaint, Allied asserted that it is entitled to workers' compensation immunity. Allied acknowledged that it was not Bowens's general employer and thus not responsible for submitting the alleged fraudulent training documents to workers' compensation. However, it asserted a specific legal defense contending that it was Bowens's "special employer" for purposes of workers' compensation immunity because of the nature of the employment relationship. Accordingly, we find that because a special employment relationship existed in this case, the two defenses were not irreconcilable.

## IV.

## CONCLUSION

Based on the arguments of the parties and the record as submitted in the appendix in this case, we conclude that the circuit court's orders that are the subject of this appeal are not erroneous. By order dated April 15, 2009, the circuit court properly granted summary judgment on Bowens's workers' compensation and common law fraud claims because there was no basis to conclude that the alleged fraudulent conduct, in which Allied did not participate, had any prejudicial effect on the decision of the administrative law judge regarding the suspension of his temporary total disability benefits. Additionally, by order dated June 8, 2010, the circuit court properly granted summary judgment to Allied on Bowens's negligence claim on the basis that Allied was Bowens's special employer, thus entitling Allied to workers' compensation immunity from such a negligence claim. For these reasons, the April 15, 2009,

and June 8, 2010, orders of the Circuit Court of Wayne County are affirmed.

**Affirmed.**